**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| SYMBOL TECHNOLOGIES, INC., a Delaware Corporation, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) C.A. No. 05-146-GMS ) |
| INTERMEC TECHNOLOGIES CORP., a Washington Corporation, | ) **DEMAND FOR JURY TRIAL** ) ) ) |
| Defendant. | ) |

## ANSWER AND COUNTERCLAIMS OF INTERMEC TECHNOLOGIES CORP.

Defendant Intermec Technologies Corp. ("Intermec") responds to the numbered paragraphs of the Complaint filed by Symbol Technologies, Inc. ("Symbol") as follows:

1. Admitted that this is an action for a declaratory judgment and that this Court has subject matter jurisdiction; otherwise, denied.

2. Admitted.

3. Admitted.

4. Intermec is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 4.

5. Admitted.

6. Admitted that Intermec purchases certain products from Symbol, as defined in the OEM Agreement, the terms of which speak for themselves.

7. Admitted that Paragraph 9.c of the OEM Agreement, which speaks for itself, provides that "[i]f either Party asserts a bona fide claim of patent infringement outside the

scope of the covenant of Section 18.k against the other Party, then such other party may in addition to any other rights and remedies it may have at law or in equity terminate this Agreement upon thirty (30) days prior written notice."

8. Denied.

9. Denied.

10. Intermec is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 10.

11. Admitted that on March 10, 2005 Symbol notified Intermec that "Matrics ceased to exist as a separate entity and instead was merged into Symbol," demanded that Intermec "discontinue the Delaware Action," and informed Intermec that "Symbol intends to terminate the OEM Agreement upon the expiration of thirty days" from March 10, 2005; otherwise, denied.

12. Admitted that Intermec has not discontinued the Delaware Action against Matrics and does not intend to discontinue that action, and has advised Symbol of its belief that Symbol does not have the right to terminate the OEM Agreement; otherwise, denied.

13. Intermec repeats and re-alleges each and every allegation contained in paragraphs 1 through 12 hereof, as if fully set forth herein.

14. Admitted.

15. Denied that Symbol is entitled to any remedy at law at otherwise.

16. Denied.

## AFFIRMATIVE DEFENSES

17. Symbol's claim is barred by its unclean hands.

## COUNTERCLAIMS

For its counterclaims against Symbol, Intermec alleges:

18.     Intermec is incorporated under the laws of the State of Washington, and has its principal place of business at 6001 36th Avenue West, Everett, Washington 98203.

19.     Upon information and belief, Symbol is incorporated under the laws of the State of Delaware, and has its principal place of business at One Symbol Plaza, Holtsville, New York 11742.

20.     This Court has jurisdiction over these counterclaims pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §2201-2202 and 28 U.S.C. § 1332(a) in that Intermec and Symbol are citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

## BACKGROUND FACTS

21.     In August, 2003, Intermec and Symbol entered into a contract (the "OEM Agreement") whereby Symbol agreed to sell products to Intermec, and Intermec agreed to purchase products from Symbol, for use in cabled and cordless hand held laser bar code readers, scanning integrated terminals, and wearable scanning systems. The OEM Agreement became effective on January 1, 2004 and runs until December 31, 2006, with automatic one year renewal terms, unless a party provides notice of its intent not to renew.

22.     On June 7, 2004, Intermec IP Corp. ("Intermec IP"), a subsidiary of Intermec, sued Matrics, Inc. ("Matrics") in this Court for infringement of four patents related to radio frequency identification ("RFID") technology in Civil Action No. 04-357-GMS (the "Delaware RFID Action"). Matrics filed an Answer and Counterclaim on July 13, 2004 and an Amended Answer and Counterclaim on January 21, 2005.

23. Paragraph 9.c of the OEM Agreement provides:

Patent Assertion. If either Party asserts a bona fide claim of patent infringement outside the scope of the covenant of Section 18.k against the other Party, then such other party may in addition to any other rights and remedies it may have at law or in equity terminate this Agreement upon thirty (30) days prior written notice.

24. Paragraph 18.k of the OEM Agreement provides:

Covenants. During the Term of the Agreement each Party shall not sue (or bring a counterclaim against) the other party for any claim of infringement (referring to any provisions of 35 USC 271 or comparable foreign provisions) of any patent, whether now or hereinafter in existence, against or relating to any product except for (i) bar code readers to the extent that they use CCD sensor technology, and (ii) RFID Reader Products and RFID Tags except to the extent that they read bar codes. In the event of a breach of this section, the non-breaching party shall have, without limitation of any other right or remedies it may have, the right to terminate this Purchase Agreement by giving the breaching party at least thirty days (30) written notice (which may be extended upon mutual agreement of the parties) of its intention to terminate; provided, however, that if the parties settle the patent infringement lawsuit that accounted for the breach of this Section during such thirty days (30) period, then this Agreement shall not be terminated on the date specified in such notice.

25. By letter dated December 16, 2004, Symbol advised Intermec that, subsequent to the filing of the Delaware RFID Action, Symbol had acquired all of the stock of Matrics and that Matrics had been merged into Symbol. Symbol also asserted that the continuation of Intermec IP's Delaware RFID Action against Matrics was "now a suit by Intermec against Symbol" and that Symbol might terminate the OEM Agreement pursuant to Paragraph 9.c if Intermec IP did not discontinue the Delaware RFID Action against Matrics.

26. By letter dated December 20, 2004, Intermec advised Symbol that Intermec IP's continuation of the Delaware RFID Action against Matrics did not give Symbol the

4

right to terminate the OEM Agreement pursuant to paragraph 9.c and that Intermec IP did not intend to discontinue the Delaware RFID Action against Matrics.

27. By letter dated March 10, 2005, Symbol advised Intermec again that it had acquired Matrics and that Matrics had been merged into Symbol. Symbol also repeated that the action against Matrics was "now a suit by Intermec against Symbol." Symbol concluded the letter by saying that it "hereby gives notice that Symbol intends to terminate the OEM Agreement upon the expiration of thirty days from the date hereof...." In a Form 8-K filed with the Security and Exchange Commission on or about March 10, 2005, Symbol reported that "it had notified Intermec on March 10, 2005 of its intention to terminate, effective April 9, 2005" the OEM Agreement.

28. On March 10, 2005, Symbol filed an action in this Court, Civil Action No. 05-147-SLR ("the Symbol Patent Case") alleging that Intermec had infringed certain patents and issued a press release stating that it had filed the Symbol Patent Case in response to the action against Matrics.

## COUNT I
## DECLARATORY JUDGMENT

29. Intermec repeats and re-alleges each and every allegation contained in paragraphs 18-28 hereof.

30. Intermec IP's filing and maintenance of the patent infringement action against Matrics did not give Symbol the right to terminate the OEM Agreement prior to December 31, 2006. Symbol had no right under Paragraph 9.c of the OEM Agreement to terminate that agreement.

31. An actual and justiciable controversy exists between Intermec and Symbol concerning the parties' rights under the OEM Agreement.

5

32. Intermec is entitled to a declaration pursuant to 28 U.S.C. § 2201 that Symbol had no right to terminate the OEM Agreement.

33. Intermec has no adequate remedy at law.

## COUNT II
## BREACH OF CONTRACT

34. Intermec repeats and re-alleges each and every allegation of paragraphs 18-33 hereof.

35. Symbol's purported termination of the OEM Agreement, when it had no right of termination, constitutes a breach of that agreement.

36. Intermec has been damaged by Symbol's breach of the OEM Agreement in an amount yet to be determined and will continue to be damaged unless and until Symbol's breach is enjoined by this Court.

37. Under the OEM Agreement, Intermec is entitled to recover its costs, including reasonable attorneys' fees, for this dispute, which arises out of, or is related to, the OEM Agreement.

38. Intermec has no adequate remedy at law.

## COUNT III
## BREACH OF CONTRACT

39. Intermec repeats and re-alleges each and every allegation of paragraphs 18-38 hereof.

40. Symbol covenanted, in Paragraph 18.k of the OEM Agreement, not to sue Intermec for any claim of infringement of any patent during the term of that agreement, with the exception of RFID and CCD claims.

41. On March 10, 2005, Symbol filed the Symbol patent case against Intermec in this Court, asserting that Intermec products infringe four Symbol wireless communication patents, and seeking damages for the alleged infringement, as well as injunctive relief, in the Symbol Patent Case.

42. Symbol's filing of the Symbol Patent Case on March 10, 2005 was a breach of Paragraph 18.k of the OEM Agreement.

43. As set forth above, Paragraph 9.c of the OEM Agreement provides that, under certain circumstances, a party may "terminate this Agreement upon thirty (30) days prior written notice." Symbol had no right to terminate the OEM Agreement pursuant to Paragraph 9.c on March 10, 2005. However, even if Symbol had been entitled to terminate the OEM Agreement, it could do so only upon thirty days' prior written notice.

44. In its March 10, 2005 letter, Symbol purported to give Intermec "notice that Symbol intends to terminate the OEM Agreement upon the expiration of thirty days from the date hereof." Symbol confirmed in its Form 8-K that the purported termination would be "effective April 9, 2005."

45. Even if Symbol had been entitled to terminate the OEM Agreement (which it was not), Symbol's filing of the Symbol Patent Case against Intermec occurred prior to the purported termination of the agreement, and Symbol's filing of that action was a breach of Paragraph 18.k of the OEM Agreement.

46. Intermec has been damaged by Symbol's breach of the OEM Agreement in an amount yet to be determined, and will continue to be damaged until Symbol's breach is enjoined by this Court.

47. Under the OEM Agreement, Intermec is entitled to recover its costs, including reasonable attorneys' fees, for this dispute, which arises out of, or is related to, to the OEM Agreement.

48. Intermec has no adequate remedy at law.

## COUNT IV
## BREACH OF CONTRACT

49. Intermec repeats and re-alleges each and every allegation of paragraphs 18-48 hereof.

50. Paragraph 5.a of the OEM Agreement provides for a "Frozen Release Commitment," for quantities of product forecast by Intermec.  Paragraph 9.d of the OEM Agreement provides that the termination of the OEM Agreement "shall not affect or impair the rights, liabilities and obligations of either party to the other under any Frozen Release Commitment for Product existing prior to such expiration or termination, nor relieve either party of any obligation or liability accrued under this Agreement or pursuant to any firm order prior to such expiration or termination."

51. Symbol has refused to honor its Frozen Release Commitment under the OEM Agreement.

52. Even if Symbol had a right to terminate the OEM Agreement (which it did not), its failure to comply with its obligations under Paragraph 9.d of the OEM Agreement is a breach of that agreement.

53. Intermec has been damaged by Symbol's breach of the OEM Agreement in an amount yet to be determined and will continue to be damaged unless and until Symbol's breach is enjoined by this Court.

54. Under the OEM Agreement, Intermec is entitled to recover its costs, including reasonable attorneys' fees, for this dispute, which arises out of, or is related to, the OEM Agreement.

55. Intermec has no adequate remedy at law.

Wherefore, Intermec seeks a judgment:

(a) Dismissing Symbol's complaint with prejudice;

(b) Declaring that Symbol had no right to terminate the OEM Agreement on March 10, 2005 or April 9, 2005, and that the OEM Agreement remains in full force and effect;

(c) Awarding Intermec damages resulting from Symbol's breach of the OEM Agreement;

(d) Awarding Intermec its attorneys' fees and costs;

(e) Enjoining Symbol, its officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them from breaching the OEM Agreement; and

(f) Granting Intermec such other and further relief as the Court shall deem just and proper.

MORRIS, NICHOLS, ARSHT & TUNNELL

*/s/ Jack B. Blumenfeld*
Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
Leslie A. Polizoti (#4299)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
  *Attorneys for Defendant and Counterclaim*
  *Plaintiff Intermec Technologies Corp.*

OF COUNSEL:

Frederick A. Lorig
Bruce R. Zisser
BRIGHT & LORIG
633 West Fifth Street
Suite 3330
Los Angeles, CA  90071
(213) 627-7774

March 23, 2005
456208

CERTIFICATE OF SERVICE

I, Jack B. Blumenfeld, hereby certify that on March 23, 2005 I electronically filed Answer and Counterclaims of Intermec Technologies Corp. with the Clerk of the Court using CM/ECF, which will send notification of such filing to Karen L. Pascale (kpascale@bmf-law.com).

I also certify that copies were caused to be served on March 24, 2005 upon the following in the manner indicated:

**BY HAND**

Karen L. Pascale, Esquire
Bouchard, Margules & Friedlander
222 Delaware Avenue
Suite 1400
Wilmington, DE  19801

**BY FEDERAL EXPRESS**

Eric J. Lobenfeld, Esquire
Hogan & Hartson
875 Third Avenue
New York, NY  10022

/s/    Jack B. Blumenfeld (#1014)
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com