# EXHIBIT 2

Westlaw.

Not Reported in A.2d
2005 WL 1089025 (Del.Ch.)
(Cite as: 2005 WL 1089025 (Del.Ch.))

Page 1

Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Court of Chancery of Delaware.
Raphael F. NEVINS, Plaintiff,
v.
George BRYAN, Dean Whitla, William Schuler, Carolyn Tinker, Vicki Irving, and Center for the Advancement of Distance Education in Rural America, a corporation, Defendants.
No. Civ.A. 19975-NC.

Submitted Jan. 21, 2005.
Decided May 4, 2005.

Raphael F. Nevins, Las Cruces, New Mexico, Plaintiff pro se.

Michael R. Ippoliti, Michael R. Ippoliti, Attorney-at-Law, P.A., Wilmington, Delaware, Gregory S. Hyman, Jennifer Ward Hampton, Spector Gadon & Rosen, P.C., Moorestown, New Jersey, for Defendants.

MEMORANDUM OPINION

PARSONS, Vice Chancellor.

*1 This is an action under 8 Del. C. § 225 to determine the proper directors and members of the Center for the Advancement of Distance Education in Rural America ("CADERA" or the "Corporation").

*Pro se* Plaintiff, Raphael F. Nevins, contends that Defendants George Bryan, William Schuler and Vicki Irving (collectively referred to as "Director Defendants") are not valid directors of CADERA. Nevins argues that the written consent dated July 16, 2000 (the "July 16, 2000 Written Consent") was ineffective and did not appoint the Director Defendants as CADERA directors. Nevins further argues that the actions that CADERA's board of directors (the "Board") took at meetings between August 1, 2001 and October 3, 2001 were ineffective to cure this defect. Additionally, Nevins contends that the October 24, 2001 vote to remove him as a Board member and Executive Director of CADERA was invalid because the Director Defendants and Defendant Carolyn Tinker were not valid members of the Corporation and because he was not permitted to vote.

Based on the evidence presented at trial, the Court finds that the Director Defendants are valid directors and that they and Tinker are valid members of CADERA. Furthermore, the Court rejects Nevins's challenge to the actions taken to remove him from his positions at CADERA.

I. FACTS AND PROCEDURAL HISTORY
A. The Launch of CADERA

CADERA is a non-profit membership corporation formed for charitable and educational purposes under Delaware law. CADERA is funded by the Fund for the Improvement of Post-Secondary Education, a federal funding source. CADERA develops, tests and promulgates educational tools and on-line career training for the advancement of education in rural America. Plaintiff Nevins incorporated CADERA in Delaware on July 19, 1999. As the incorporator, Nevins appointed himself, Frank Kolodny and Dean Whitla (collectively referred to as the "Initial Directors") as directors and members of CADERA. [FN1]

> FN1. *See* TRO Hearing Tr. at 85 (former Vice Chancellor, now Justice, Jacobs ruling that Kolodny and Whitla were initial directors and members of CADERA); Order dated December 16, 2003 (reaffirming the finding after a motion for summary judgment).

The Initial Directors held a Board meeting on January 11, 2000. At the meeting, the Board appointed Nevins as Chairman of the Board and Executive Director, and Whitla as Secretary of CADERA. Additionally, the Initial Directors discussed expanding the size of the Board.

On January 12, 2000, the Initial Directors unanimously approved and signed a written consent to expand the size of the Board from three to seven members. CADERA's bylaws permit "a majority of the Directors then in office" to fill any vacancies occurring on the Board or any newly created directorship positions. [FN2] In accordance with that provision, the Initial Directors filled the four vacancies created by the expansion of the Board with Tinker, John Whitman, Sybil Shainwald and Raymond Ravaglia. [FN3] However, neither

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d    Page 2
2005 WL 1089025 (Del.Ch.)
**(Cite as: 2005 WL 1089025 (Del.Ch.))**

Shainwald nor Ravaglia ever attended Board meetings or participated in decisions as a director of CADERA, and Whitman resigned on July 22, 2000.

> FN2. Art. III, ¶ 12.

> FN3. All three Initial Directors approved the nomination and appointment of Tinker as a CADERA director as evidenced by the fully executed Action by Written Consent dated January 12, 2000. *See* JDX 127. Furthermore, Nevins concedes that Tinker is a proper director. *See* Pre-Trial Order II, ¶ 41.

B. The Introduction of Director Defendants

*2 Faced with three open seats on the Board, Nevins actively recruited Bryan, Schuler and Irving to serve as CADERA directors in or around the spring of 2000. All three Director Defendants are well respected individuals holding esteemed positions in the fields of education or government. Bryan is the Dean Emeritus of the School of Medicine at the University of Texas Medical Branch, and was a member of the National Committee on Foreign Medical Education and Accreditation for the U.S. Department of Education. Schuler, a highly decorated retired Colonel of the U.S. Air Force, serves on the board of directors of the University of New Mexico Science and Technology Corporation and as a member of the Governor's Business Advisory Council in New Mexico. Irving serves as the Senior Technical Support Representative for House Information in the U.S. House of Representatives. Nevins purposefully recruited these respected and experienced individuals to increase the credibility (and funding) of CADERA. [FN4]

> FN4. Whitla testified that one of the reasons the Initial Directors expanded the size of the Board and looked for additional directors was to "add[ ] some strength to the CADERA board." Trial Tr. ("Tr.") at 621. Tinker testified that she believed that the purpose of enlisting distinguished individuals to serve on the Board and advisory board was that they were a "very impressive list of useful resources that would aid in gathering funding; in other words, a very distinguished list of people that would impress folks considering whether CADERA was valuable and substantive." *Id.* at 122.

Sometime during the summer of 2000, Nevins discussed his nomination of Bryan, Schuler and Irving for CADERA directorships with Whitla. Whitla approved the nominations of these individuals and advised Nevins that he consented to their appointment. On December 29, 2000, Nevins faxed Gary Grotto, CADERA's attorney, a list of the "revised CADERA board members" that identified Tinker, Kolodny, Whitla, Nevins, Irving, Schuler and Bryan as directors. [FN5] Grotto had a revised written consent, which was retroactively dated July 16, 2000 at Nevins's request, emailed to Nevins. Nevins signed the July 16, 2000. Written Consent, but did not forward it to Kolodny and Whitla for their signatures. Thus, the July 16, 2000 Written Consent was not signed by either Kolodny or Whitla. Nevertheless, Nevins believed that the Director Defendants were proper directors of CADERA after he signed the July 16, 2000 Written Consent. [FN6] Kolodny and Whitla also believed that the Director Defendants were proper directors of CADERA. In fact, for over a year all three Initial Directors attended Board meetings where the Director Defendants were present and participated as directors without objecting to their presence or participation.

> FN5. JDX 99; DX 3.

> FN6. Pre-Trial Order II, ¶ 49.

After signing the July 16, 2000 Written Consent, Nevins held the Director Defendants out as directors of CADERA in numerous communications with third parties. For example:
• On October 30, 2000, Nevins represented to Mimi Doe, a publicity and media expert, that Irving and Tinker served on the CADERA Board.
• On November 11, 2000, Nevins told Judith Manriquez, CADERA's website designer, that Irving served on the CADERA Board.
• In April of 2001, Nevins listed the directors of CADERA on its website as himself, Whitla, Kolodny, Tinker, Bryan, Schuler and Irving.
• On May 21, 2001, Nevins represented to Donna Newell, who shortly thereafter became CADERA's Vice President of Administration, that Schuler served on the CADERA Board.

*3 Additionally, Nevins did not object when he received communications in which the Director Defendants were identified or referred to as Board members. In fact, Nevins referred to the Director Defendants as "CADERA board members" in his own communications with them. [FN7] Furthermore, Nevins admitted that he believed that the Director Defendants were proper directors of CADERA as late as January 29, 2002. Nevins never contested the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
2005 WL 1089025 (Del.Ch.)
**(Cite as: 2005 WL 1089025 (Del.Ch.))**

Page 3

validity of the members of the Board until he filed this litigation in October 2002, long after Nevins himself signed the July 16, 2000 Written Consent purporting to elect the Director Defendants to the Board.

> FN7. *See* Pre-Trial Order II, ¶ 72, 73, 75-79, 81, 83-84 (emails Nevins sent to Defendants addressing Director Defendants as "Board members").

In reliance on Nevins and other Board members' representations that they were directors of CADERA, the Director Defendants contributed their reputations, time and efforts to the mission of CADERA. For example, the Director Defendants gave their biographical information to Nevins to publish on CADERA's website, thereby allowing CADERA to benefit from their distinguished reputations. All Defendants also attended Board meetings and participated in the strategic planning of CADERA.

Newell was hired by Nevins as Vice President for Administration. She began her employment at CADERA on or about July 14, 2001. Newell's duties included development and execution of action plans for CADERA's programs, as well as general organizational oversight.

C. Nevins's Arrest and the Contested CADERA Meetings

On July 30, 2001, only two weeks after Newell joined CADERA, Nevins was arrested at the Corporation's office by federal marshals and taken away. Much confusion arose from Nevins's arrest and detainment. Initially, the Board did not know the precise reason for his arrest. [FN8] Some understood it was related to an "air rage" charge filed against Nevins in January of 2000, while others were "afraid of the worst." [FN9] In fact, the charges did relate to the air rage incident. At or around the same time, auditors' reports alerted Board members to the existence of issues regarding the nature and documentation of certain expenditures that Nevins made. [FN10] On August 1, 2001, Whitla, acting in his capacity as Secretary of CADERA, called an emergency meeting of the Board. Board members were very concerned with the immediate effects of Nevins's arrest and continued detainment because, as Executive Director, Nevins was responsible for the day-to-day supervision and direction of CADERA, the only signatory to CADERA's bank account and the only person with authority to sign CADERA checks. At the emergency meeting, five of the seven putative directors were present; Nevins and Kolodny were absent. The five directors in attendance unanimously voted to remove Nevins temporarily from his positions at CADERA and to grant Newell and Schuler the power to execute financial instruments and disburse corporate funds. Newell also was elected as President and given the power to speak for the Board and the Corporation. [FN11] Additionally, the Board discussed CADERA's ongoing audit. The Board directed Newell to obtain further information regarding the audit and arrange to have the Corporation's auditors attend the next meeting. At the end of the meeting, the Board agreed to meet again on August 15, 2001. Nevins did not receive notice of the August 1, 2001 meeting because he was still in the custody of federal marshals. [FN12]

> FN8. *See* Tr. at 454-55, 516-19.
>
> FN9. *See id.* at 104-05, 516-19.
>
> FN10. *See* Tr. at 524.
>
> FN11. This office was newly created in accordance with Article IV, ¶ 1 of CADERA's bylaws.
> The Court found Schuler and Newell's testimony regarding the August Board meetings credible and reflective of a genuine concern for the Corporation, its obligations to its funding sources, and its ability to continue to raise funds in the future.
>
> FN12. Nevins was not released until on or around August 3, 2001. *See* Tr. at 512.

*4 At the August 15, 2001 Board meeting, only Nevins was absent. The directors discussed the status of the criminal case against Nevins and decided to continue his employment as an officer of CADERA provided that he agreed not to take any actions or speak on behalf of the Corporation until further notice. CADERA's auditors discussed with the Board the Corporation's ongoing audit and certain of Nevins's expenditures that they had identified as questionable. For example, Nevins reportedly used CADERA funds to pay for his daughter's sorority fees. Nevins did not receive notice of the August 15, 2001 Board meeting.

The Board met again on August 22, 2001. The Board discussed the status of the criminal case against Nevins. Newell reported that she had asked Nevins to complete an expense reconciliation report so the Board could better investigate the validity of his

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

expenditures. The Board also discussed Nevins's continuing status as a CADERA director and decided to ask Nevins to agree voluntarily not to participate as a director "until all issues had been resolved." [FN13] Finally, after a discussion of membership in CADERA, the Board approved Bryan, Irving, Schuler and Tinker as members subject to their submitting a completed application to the Corporation. [FN14] Nevins did not receive notice of the August 22, 2001 Board meeting.

>FN13. JDX 34.

>FN14. Article VI of CADERA's Certificate of Incorporation states that:
>[A]dditional Members may be admitted to the Company from time to time. Admission to the Company as a Member shall require the following: (i) completion and submission of an application in form designated from time to time by the Board of Directors; (ii) demonstration of experience relevant to the Company's educational and charitable purposes and a commitment to the furtherance of those purposes; and (iii) approval by a majority of the Board of Directors.

On September 12, 2001, a meeting of the members and directors of CADERA was held. Nevins received notice of the time and place of the meeting from Schuler on September 10, 2001. Nevins could not physically attend the meeting because he had to appear at a proceeding in Texas in connection with the criminal charges filed against him and asked Schuler for a call-in number to attend by phone instead. The Board made arrangements with Nevins to contact him at his attorney's office in Texas. [FN15] Newell and the Board called the number provided to them by Nevins in an attempt to connect him to the meeting. When they called, however, they were told that Nevins was unavailable. [FN16] Thus, Nevins did not attend the September 12, 2001 meeting.

>FN15. See Tr. at 460.

>FN16. See id.

At that meeting of the members and directors of CADERA, outside counsel, Diane Fisher, [FN17] informed the Board that she could not find "appropriate documentation that [ ] the initial board of three directors had been formally expanded to seven members; that an annual meeting for 2001 had been held to elect directors, or that George Bryan, Vicki Irving, Bill Schuler, or Carolyn Tinker had been formally elected to the Board of directors." [FN18] Counsel then advised the Board that "it would be appropriate to formally expand the size of the board of directors to seven members, and for the Members to elect the entire board of directors for new terms." [FN19] Accordingly, the six members and directors of CADERA present voted unanimously to expand the size of the Board to seven directors, elect the entire Board, including Nevins, to new terms, and ratify the Board's actions and decisions during the prior three months. In addition, Schuler was elected as the new Chairman of the Board.

>FN17. Ms. Fisher attended the September 12, 2001 meeting and the subsequent meetings on October 3 and 24, 2001. Ms. Fisher did not attend any of the CADERA Board meetings in August 2001. Richard Onsager, another CADERA attorney, was present at each of the August 2001 meetings.

>FN18. JDX 45.

>FN19. Id.

*5 At the September 12, 2001 meeting, the Board also discussed Nevins's status at length. The Board then adopted the following resolution:
>RESOLVED, that Mr. Nevins is hereby formally placed on administrative leave from the Corporation, with pay pending the Board's investigation of Mr. Nevins's prior expenditures of Corporate funds. Unless Mr. Nevins explains these expenditures, and their relationship to the Corporation's educational mission and its federal grant, to the Board's satisfaction on or before October 15, 2001, his employment with the Corporation will be terminated. [FN20]

>FN20. Id.

Schuler was directed to inform Nevins of the Board's action and review the expenditures the auditors had questioned in light of Nevins's explanations.

By letter dated September 15, 2001, Schuler informed Nevins of the Board's resolutions regarding his employment and requested additional information regarding his use of CADERA funds. Schuler expressed his, and the Board's, concern that "expenditures [of CADERA's federal grant money]

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
2005 WL 1089025 (Del.Ch.)
**(Cite as: 2005 WL 1089025 (Del.Ch.))**

Page 5

comply with the requirements of the Internal Revenue Service applicable to tax exempt organizations, including the prohibitions against private inurement and benefit." [FN21] Schuler invited Nevins to contact him to respond to these questions and signed the letter in his new position as Chairman of the Board.

> FN21. JDX 46.

The CADERA members and directors met again on October 3, 2001. Nevins attended the October 3, 2001 meeting. At this meeting, the minutes of the August 1st, 15th, 22nd and September 12th meetings were approved. Newell distributed the minutes of these meetings to all members and directors of CADERA before the October 3, 2001 meeting through an email attachment. Though Nevins claims that he did not receive the attachment, the Court does not find his testimony credible on this point. The email addressed to Nevins clearly displays icons representing the various meeting minute attachments. [FN22] Additionally, Nevins knew that he was a topic of conversation at many August and September meetings and, at the very least, that the Board was investigating his expenditures. [FN23] Indeed, Nevins previously had requested the August meeting minutes. [FN24] Therefore, it would not make sense for Nevins to receive an email from Newell purporting to contain meeting minutes as attachments but then fail to alert Newell if, in fact, he did not receive any attachments. [FN25] Nevins, however, did not reply to Newell's email to inform her that he did not receive the attachments, nor did he inform her of this at the October 3, 2001 meeting. Furthermore, even if Nevins did not receive the meeting minutes as email attachments, the evidence presented at trial demonstrated that Nevins attended the October 3, 2001 meeting and that Newell distributed paper copies of the minutes to each member or director in attendance. [FN26]

> FN22. *See* JDX 103.
>
> FN23. *See* JDX 46.
>
> FN24. JDX 36, 43.
>
> FN25. *See* Tr. at 331-42.
>
> FN26. *See id.* at 466-67. The Court accepts Newell's testimony regarding this fact.

### D. Nevins's Removal

The members and directors of CADERA next met on October 24, 2001. Nevins attended the October 24, 2001 meeting. At the meeting, Schuler reported on his review of Nevins's expenditures between January 2000 and July 2001. After summarizing guidelines regarding the use of federal grant money by grantees, Schuler reported that he believed Nevins inappropriately spent or inadequately accounted for approximately $55,000. Nevins objected to Schuler's findings primarily on the grounds that a grantee of a direct federal grant is afforded broad latitude in their use of grant money, and that all of his expenditures at issue were in furtherance of CADERA. Nevins also objected to the inclusion of nine expense items, totaling approximately $6,000, which he claimed he had not been given a specific opportunity to review. After discussion of Schuler's report and Nevins's objections, Nevins was asked to leave the meeting because of his conflict of interest and was not permitted to participate in the vote on his status. Nevins protested but was escorted out by a security guard. [FN27] The Board then voted to terminate Nevins's employment as CADERA's Executive Director. "Acting as Members of the Corporation," Kolodny, Whitla, Tinker, Schuler, Bryan and Irving also unanimously voted to remove Nevins from his seat on the Board. [FN28]

> FN27. Schuler employed a security guard for the meeting at the request of several CADERA employees and Board members who approached him before the meeting and expressed their fear that "Raphael [Nevins] might do something reckless." Tr. at 528.
>
> FN28. JDX 120.

*6 While Nevins was displeased by the Board's decisions on October 24, 2001, he continued thereafter to address the Director Defendants as directors. In an email dated November 1, 2001, Nevins wrote "I hope that Carolyn [Tinker], Frank [Kolodny], George [Bryan] and Vicki [Irving] chose [sic] to remain with CADERA for a long time, at least to keep the rest of the newer Board members on course, and that each of you play a very careful role in adding new members to the Board." [FN29]

> FN29. JDX 64.

Through the end of January 2002, members of the Board and Nevins continued to communicate regarding his disputed expenditures, as well as back pay owed to Nevins. [FN30] In fact, the Board and Nevins were involved in a separate piece of litigation regarding Nevins's unemployment benefits until early

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
2005 WL 1089025 (Del.Ch.)
**(Cite as: 2005 WL 1089025 (Del.Ch.))**

Page 6

June 2002, when the Board decided to discontinue its active opposition because of the administrative and financial burdens it caused. [FN31]

> FN30. *See* JDX 70, 73.

> FN31. *See* JDX 78.

On September 25, 2002, the Board proposed that CADERA dissolve. The Board sent notice to the CADERA members, including Nevins, of an October 16, 2002 members meeting to vote on the proposal to dissolve CADERA. After receiving the notice, Nevins, claiming to be the only proper member of CADERA, executed a written consent on October 1, 2002 that purportedly: (i) removed all directors; (ii) reduced the number of authorized directors on the Board from seven to three; and (iii) appointed himself, Andrew Nevins and Lorna Samraj as directors of CADERA. On October 3, 2002, Nevins sent a copy of the October 1 written consent to CADERA's attorney and demanded that all directors relinquish their titles immediately. The directors refused.

### E. This Litigation

On October 15, 2002, Nevins filed this suit pursuant to 8 *Del. C.* § 225 seeking a declaration that he was the only valid member of CADERA and a temporary restraining order prohibiting the dissolution of CADERA by Defendants. [FN32] After argument on Nevins's motion for a TRO, former Vice Chancellor, now Justice, Jacobs determined that Nevins was not the sole member of CADERA but rather that Nevins, Kolodny and Whitla were all initial members and directors. After briefing and argument on the parties' later cross motions for summary judgment, this Court found that Tinker is a valid CADERA director. [FN33] Trial was held August 2 through 4, 2004. This Memorandum Opinion reflects the Court's post-trial findings of fact and conclusions of law.

> FN32. Defendants claim that as a result of Nevins's actions, a member meeting was never held and no vote was taken on the Board's proposal to dissolve CADERA. *See* Defendants' Answering Brief to Plaintiffs Post-Trial Brief ("DAB") at 2 n. 2.

> FN33. At that time, the Court also found that Bryan, Schuler, Tinker and Irving were valid members of CADERA. Thereafter, the Court allowed Nevins to reargue the membership issue in the post-trial briefing.

### II. ANALYSIS

Section 225 of the Delaware General Corporation Law states that, "[u]pon application ... the Court of Chancery may hear and determine the validity of any election, appointment, removal or resignation of any director, member of the governing body, or officer of any corporation, and the right of any person to hold or continue to hold such office." Nevins contends that the Director Defendants are not valid directors of CADERA. Nevins argues that the July 16, 2000 Written Consent, which he himself executed, was not sufficient to make the Director Defendants valid CADERA directors and that actions CADERA members and directors took at meetings between August 1 and October 3, 2001 did not cure this defect. [FN34] Additionally, Nevins argues that the October 24, 2001 votes to remove him as an officer and director of CADERA were void because the Director Defendants' votes were invalid, and because he was not permitted to vote. Defendants argue that Nevins is equitably estopped from claiming that the Director Defendants are not valid CADERA directors. Defendants also claim that even if Nevins were not estopped, actions taken at the August 1 through October 24, 2001 meetings were valid or, at the very least, Nevins waived any objections he might have had to technical defects related to those meetings.

> FN34. In his post-trial briefs, Nevins repeatedly asserts that Defendants breached their fiduciary duties of loyalty and care. Nevins also asks this Court to rule on the validity of actions he claims Defendants took to dissolve CADERA in September 2002. As the Court has stated on the record on numerous occasions, this case was brought under § 225 and, as such, its scope is limited to arguments regarding the validity of actions to elect or remove a director, officer or member of CADERA. *See Box v. Box,* 697 A.2d 395, 398 (Del.1997) ("a section 225 action is not to be used for trying purely collateral issues"). "A claim is collateral to a § 225 proceeding if it would not help 'the court determine the proper composition of the corporation's board or management.' " *Stengel v. Rotman,* 2001 WL 221512, at *8 (Del.Ch. Feb.26, 2001), *aff'd,* 783 A.2d 124, (Del.2001) (quoting *Agranoff v. Miller,* 1999 WL 219650, at *18 (Del.Ch. Apr.12, 1999), *aff'd,* 737 A.2d 530 (Del.1999)). Nevins, however, continues to seek the Court's review of collateral issues because of what

he terms "material misdisclosure and negligent silence revealed" at trial. *See, e.g.,* Plaintiff's Post Trial Brief ("POB") at 64. All evidence admitted at trial was for the purposes of this Court's determination under § 225. *See In re Bigmar, Inc.,* 2002 WL 550469, at *17 (Del.Ch. Apr.5, 2002). Therefore, Nevins's arguments that do not relate to a determination of the proper composition of the Board are outside the scope of this case and will not be addressed by the Court.

### A. The Validity of the Director Defendants' Election

#### 1. The September 12, 2001 meeting

*7 At the September 12, 2001 meeting, members held a special election to elect the entire Board to new terms. The Board was expanded from three to seven persons on January 12, 2000. This expansion, coupled with Shainwald and Ravaglia's refusal to become Board members and Whitman's resignation, created three vacant seats on the Board. The record shows that the defect in the July 16, 2000 Written Consent, which purports to fill these vacancies with the Director Defendants, was unintended. Nevins, Whitla and Kolodny all believed that the Director Defendants were validly made Board members before September 12, 2001. While the previously elected *directors* present at the September 12, 2001 meeting (Tinker, Whitla and Kolodny) could have corrected this defect under the CADERA bylaw provision that permits directors to fill vacancies on the Board, they did not. Upon the advice of counsel, which ultimately proved to be only partially correct at least in terms of notice requirements, the *members* of CADERA elected all of the directors to new terms as evidenced by the meeting minutes, which state:

> [CADERA's attorney] stated that she was unable to obtain appropriate documentation that ... George Bryan, Vicki Irving, Bill Schuler, or Carolyn Tinker had been formally elected to the board of directors. [CADERA's attorney] stated that it would be appropriate ... for the Members to elect the entire board of directors for new terms. Following discussion it was unanimously:
>
> * * *
>
> RESOLVED FURTHER, that the following persons are hereby elected as directors of the corporation: George Bryan, Vicki Irving, Bill Schuler, Carolyn Tinker, Dean Whitla, Frank Kolodny, and Raphael Nevins. [FN35]

FN35. JDX 45. Upon closer examination, the parties have agreed that, contrary to the statement by CADERA's counsel, Tinker was formally elected to the Board before the September 12, 2001 meeting.

Therefore, the meeting was a special meeting of members to elect directors which, under CADERA's bylaws, requires 10 days notice and a statement of purpose. [FN36] The members, including Nevins, however, received only the two days notice required for director meetings and no clear indication that a member election of directors would occur. Consequently, notice of the September 12, 2001 members meeting was faulty.

FN36. Art. II, ¶ 4.

Nevins correctly asserts that invalid notice destroys the validity of director or member meetings and the validity of all corporate actions taken therein. [FN37] Nevins also argues that the actions taken by the Board were void rather than voidable. Under Delaware law, the distinction between those two categories is well established.

FN37. *See, e.g., In re Bigmar,* 2002 WL 550469, at *16 (finding that because corporate actions were taken at an invalid meeting, those actions were invalid).

The essential distinction between voidable and void acts is that the former are those which may be found to have been performed in the interest of the corporation but beyond the authority of management, as distinguished from acts which are *ultra vires,* fraudulent or gifts or waste of corporate assets. The practical distinction ... is that voidable acts are susceptible to cure by shareholder approval while void acts are not. [FN38]

FN38. *Michelson v. Duncan,* 407 A.2d 211, 218-19 (Del.1979) (internal citations omitted).

Void acts are not ratifiable "because the corporation cannot, in any case, lawfully accomplish them." [FN39] Void acts are "illegal acts or acts beyond the authority of the corporation." [FN40] In contrast, voidable acts are ratifiable because the corporation can lawfully accomplish them if it does so in the appropriate manner. [FN41]

FN39. *Harbor Fin. Partners v. Huizenga,* 751 A.2d 879, 896 (Del.Ch.1999).

FN40. *Id.*

FN41. *See id.*

*8 The corporate actions taken at the September 12, 2001 meeting and at issue in this case were: (1) a member vote to elect Nevins, Kolodny, Whitla, Tinker, Irving, Schuler and Bryan to the Board, (2) election of Schuler as Chairman of the Board, (3) ratification of the August 22, 2001 approval of Tinker and Director Defendants as members of CADERA, and (4) ratification of the August 1, 2001 election of Newell to the newly created office of President. [FN42] CADERA's bylaws clearly allow the Corporation to hold a special election of members to elect directors to the Board. [FN43] They also allow the Board to create other corporate offices, such as President, "as may from time to time be authorized by the Board of Directors" and elect a Chairman of the Board. [FN44] CADERA's certificate of incorporation authorizes the Board of Directors to approve individuals for membership in the Corporation. [FN45] Nothing in Delaware law prohibits such action. Thus, all of the disputed corporate actions listed above lawfully could have been accomplished by the Defendants had they done them in the appropriate manner, *i.e.*, had they given proper notice of the meeting. These actions were in the interest of CADERA and did not constitute *ultra vires* acts, fraud [FN46] or corporate waste. Adding individuals with such distinguished reputations as the Director Defendants as directors and members of CADERA helped to increase the Corporation's credibility and ability to obtain funding. Therefore, the corporate actions at issue were voidable actions susceptible to cure by member approval and to the defense of estoppel.

> FN42. At the September 12, 2001 meeting the Board also expanded the size of the Board to seven directors. Since the parties agree that this expansion was already effectively accomplished by the January 12, 2000 written consent, that aspect of the Board's action was superfluous and need not be addressed further.

> FN43. Art. II, ¶¶ 1, 2.

> FN44. Art. IV, ¶¶ 1, 2, 6.

> FN45. Art. VI.

> FN46. The Court disagrees with Nevins's characterization of the Board's efforts to include him in the September 12, 2001 meeting. Nevins argues that the Board's actions "amount to trickery and deceit" (POB at 46) such as that found in *Oberly v. Kirby*, 592 A.2d 445 (Del.1991). As the Court found in Section I *supra,* Nevins could not physically attend the September 12, 2001 meeting because he had to appear at a proceeding in Texas in connection with the air rage charges filed against him. The Board made arrangements with Nevins to contact him at his attorney's office in Texas. When the Board called the phone number provided to them by Nevins, however, they were told that Nevins was unavailable. Therefore, the Court finds that Nevins failed to show the existence of "trickery and deceit" or fraud by the Board in connection with any aspect of the September 12, 2001 meeting. The Court has reached the same conclusion as to the other relevant meetings from August 1 through October 24, 2001.

2. Nevins's objection to improper notice is barred by acquiescence and
laches

Nevins is barred from contesting the validity of the September 12, 2001 meeting by the doctrines of acquiescence and laches. To prove acquiescence Defendants must demonstrate that Nevins had full knowledge of his rights and the material facts surrounding the September 12, 2001 vote and "(1) remain[ed] inactive for a considerable time; or (2) freely d[id] what amounts to recognition of the complained of act; or (3) act[ed] in a manner inconsistent with the subsequent repudiation, which leads the other party to believe the act has been approved." [FN47] To prove laches Defendants must show that "(a) plaintiff knew (or should have known) of its rights or claim; (b) plaintiff failed to assert its rights or claim; and (c) defendant has materially changed its position or otherwise materially relied on plaintiff's failure to assert." [FN48]

> FN47. *Cantor Fitzgerald, L.P. v. Cantor,* 2000 WL 307370, at *24 (Del.Ch. Mar.13, 2000) (internal citations omitted).

> FN48. *Gotham Partners v. Hallwood Realty Partners,* 714 A.2d 96, 104 (Del.Ch.1998).

Nevins had full knowledge of his rights and the material facts surrounding the September 12, 2001 meeting. Nevins was the founder, Chairman of the Board and Executive Director of CADERA. In these

Not Reported in A.2d
2005 WL 1089025 (Del.Ch.)
**(Cite as: 2005 WL 1089025 (Del.Ch.))**

Page 9

capacities, Nevins was familiar with CADERA's certificate and bylaws, and the rights he enjoyed as both a member and director. Furthermore, Nevins had notice of the faulty elections of the Director Defendants by at least October 3, 2001. [FN49] Nevins attended the October 3, 2001 meeting where the Board approved the September 12, 2001 meeting minutes. Those minutes clearly disclosed that *members* elected the Director Defendants to the Board for new terms. The Court has found that Nevins received the September 12, 2001 meeting minutes before the October 3, 2001 meeting as an attachment to an email, and at the meeting as a handout. While Nevins claims that CADERA did not give him access to corporate books and, therefore, he did not have knowledge of material facts, the purportedly withheld documents relate to his collateral claims regarding Defendants' alleged breaches of their fiduciary duties rather than the validity of the September 12, 2001 election of the Director Defendants to the Board. Therefore, Nevins had full knowledge of his rights and the material facts surrounding the September 12, 2001 election.

> FN49. *See President & Fellows of Harvard Coll. v. Glancy*, 2003 WL 21026784, at *17 (Del.Ch. Mar.21, 2003) (finding that plaintiffs were on notice of faulty elections from the moment they became the beneficial owners of their shares).

*9 Nevins also acted in a manner inconsistent with his later challenge to the validity of the Director Defendants' directorships. At the October 3, 2001 meeting, Nevins approved the September 12, 2001 minutes that disclosed the election of the Director Defendants. Thereafter, Nevins repeatedly treated the Director Defendants as directors. For example, Nevins did not object to the Director Defendants' participation in the October 24, 2001 meeting. This failure to object is significant. If Nevins truly believed that the September 12, 2001 election was faulty and that the Director Defendants were not valid CADERA directors, why would he allow them to participate in a vote to remove him from his CADERA positions? Even after the October 24, 2001 meeting Nevins continued to address the Director Defendants as directors in his communications with them . [FN50] Nevins's actions after he had notice of the September 12, 2001 election are therefore inconsistent with his later challenge to the validity of that election.

> FN50. *See* JDX 64.

The first time Nevins objected to the September 12, 2001 election was in October 2002, over a year later. In the circumstances of this case, the passage of that much time constitutes unreasonable delay that injured Defendants. [FN51] The Director Defendants relied on Nevins's apparent acquiescence to their CADERA directorships. The Board took a number of actions during the intervening year, including removing Nevins as a CADERA officer, participating in litigation regarding Nevins's unemployment benefits and proposing a resolution to dissolve the Corporation. Had Nevins made a timely objection, the Board easily could have given members proper notice and re-elected the Director Defendants. Therefore, all Defendants, including the Corporation, have been harmed by Nevins's unreasonable delay.

> FN51. *See Stengel*, 2001 WL 221512, at *7 (finding plaintiff's objection to the validity of a director election, where plaintiff had knowledge of the defect and waited one and a half months after the election to challenge it, constituted unreasonable delay).

Under the doctrines of laches and acquiescence, Nevins is barred from objecting to the two days, rather than ten days, notice he received of the September 12, 2001 meeting and the lack of a full statement of purpose. Thus, the actions taken at the meeting are valid and Nevins's objection to the notice is effectively waived. [FN52] Article IX of CADERA's bylaws state that:

> FN52. All other members and directors were present at the September 12, 2001 meeting. Article II, ¶ 4 of CADERA's bylaws states that "[a]ttendance of a Member at a meeting shall constitute a waiver of notice of such meeting, except where the Member attends for the express purpose of objecting to the transaction of any business because the meeting is not lawfully called or convened." *See also* Art. II, ¶ 11. Therefore, all other members of CADERA also waived their right to object to the notice of the meeting.

Any meeting ... with respect to which notice is waived by any absent Member or director may be held at any time for any purpose and at any place and shall be deemed to have been validly called and held, and all acts performed and all business conducted at such meetings shall be valid in all respects.

Therefore, the Director Defendants validly were elected CADERA directors, Schuler was elected as

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d  
2005 WL 1089025 (Del.Ch.)  
**(Cite as: 2005 WL 1089025 (Del.Ch.))**

Page 10

the new Chairman of the Board and the Board's actions during the three months preceding the September 12, 2001 meeting were ratified. [FN53]

> FN53. The Board's actions during the three months preceding the September 12, 2001 meeting included its August 15, 2001 election of Newell as president, and its August 22, 2001 approval of Bryan, Irving, Schuler and Tinker as members of CADERA. Nevins did not receive proper notice of these meetings. However, as discussed in Section II.A.1 *supra,* the actions taken at the August 15 and 22, 2001 meetings were voidable actions that could be ratified by members. "It is the law of Delaware, and general corporate law, that a validly accomplished shareholder ratification relates back to cure otherwise unauthorized acts of officers and directors." *Michelson,* 407 A.2d at 219. This court has, in the past, noted the parallels between shareholders and members stating that, "8 Del. C. § 141(j), which governs the relationship between the members and directors of a nonstock corporation, states '[e]xcept as may be otherwise provided by the certificate ..., section [141] shall apply to ... a [nonstock] corporation, and when so applied, all references to ... stockholders shall be deemed to refer to ... the members of the corporation....' " *Oberly,* 592 A.2d at 459 n .8. At the September 12, 2001 meeting, the members ratified the Board's August 15 and 22, 2001 actions. Therefore, Newell was elected as President, and Tinker, Irving, Schuler and Bryan became members of CADERA as a result of the September 12, 2001 ratification. Nevins's motion for reargument of the Court's July 30, 2004 entry of summary judgment that Tinker, Irving, Schuler and Bryan were members of CADERA is therefore denied, except to the extent that this Memorandum Opinion clarifies the grounds for the Court's decision.

**3. In the alternative, equitable estoppel applies**

All Board members, including Nevins, have contributed valuable efforts to a charitable and educational cause. Such contributions to society are commendable. Therefore, it is unfortunate that this acrimonious situation has arisen out of the initial noble intentions of all parties.

*10 It has long been held that:

All plaintiffs seeking the aid of equity's extraordinary remedies do so subject to the maxim that he who seeks equity must do equity. This maxim is often invoked to dismiss the bill of a plaintiff who by his own actions has misled the defendant to his undoing, or who has stood silently aside and watched an innocent defendant dig his own pitfalls. The maxim lies in the heart of equity and means simply that irrespective of the nature of the remedy sought a plaintiff will not be given that which he seeks unless he is prepared to recognize and concede the rights of his adversary and accept them as a condition to the relief he seeks. [FN54]

> FN54. *Richard Paul, Inc. v. Union Improvement Co.,* 91 A.2d 49, 54- 55 (Del.1952).

Nevins is equitably estopped from claiming that the Director Defendants are not valid directors of CADERA. The doctrine of equitable estoppel is invoked "when a party by his conduct intentionally or unintentionally leads another, in reliance upon that conduct, to change position to his detriment." [FN55] The party claiming estoppel must demonstrate that: (i) they lacked knowledge or the means of obtaining knowledge of the truth of the facts in question; (ii) they reasonably relied on the conduct of the party against whom estoppel is claimed; [FN56] and (iii) they suffered a prejudicial change of position as a result of their reliance. [FN57] Equitable estoppel has been applied in the corporate context where, for example, "a stockholder, with knowledge of the facts, consents or acquiesces in the acts of directors or other corporate officers." [FN58] Regardless of the form of the action, the burden of proof of estoppel rests upon the party asserting it. [FN59] Furthermore, equitable estoppel must be proven by clear and convincing evidence; "[a]n estoppel may not rest upon an inference that is merely one of several possible inferences." [FN60]

> FN55. *Wilson v. American Ins. Co.,* 209 A.2d 902, 903-04 (Del.1965). *See also Waggoner v. Laster,* 581 A.2d 1127, 1136 (Del.1990).
>
> FN56. *See Monterey Inv., Inc. v. Healthcare Prop.,* 1997 WL 367038, at *5 (Del.Ch. June 26, 1997).
>
> FN57. *See Wilson,* 209 A.2d at 904; *Waggoner,* 581 A.2d at 1136.
>
> FN58. *Waggoner,* 581 A.2d at 1136-37.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
2005 WL 1089025 (Del.Ch.)
**(Cite as: 2005 WL 1089025 (Del.Ch.))**

Page 11

FN59. *Employers' Liab. Assurance Corp. v. Madric*, 183 A.2d 182, 184 (Del.1962).

FN60. *Employers' Liab.*, 183 A.2d at 188.

The Director Defendants have established by clear and convincing evidence all of the required elements necessary to show that Nevins is equitably estopped from claiming that they are not valid CADERA directors. First, the record demonstrates that the Director Defendants did not know of the defect in the July 16, 2000 Written Consent. The Director Defendants were not yet part of the Board when the July 16, 2000 Written Consent was executed by Nevins, but not circulated to Whitla and Kolodny for their signatures. Second, there is ample evidence that Nevins held the Director Defendants out as valid CADERA directors both to the Defendants and third parties. [FN61] There was no reason for the Director Defendants to question the validity of their seats on the Board. Besides Nevins's assertions that they were CADERA directors, none of the Initial Directors objected to their presence and participation as directors in Board meetings. [FN62] Thus, the Court finds that it was reasonable for the Director Defendants to rely on the assertions of Nevins, and tacit acquiescence of Whitla and Kolodny, that they were valid CADERA directors. Third, the Director Defendants have suffered a prejudicial change of position as a result of their reliance. Based on their belief that they were CADERA directors, the Director Defendants have devoted time and effort to CADERA and have exposed themselves to liability for actions they took believing that they were directors. In fact, while a determination of such issues is outside the scope of this action, the Court notes that since the filing of this litigation in October 2002, Nevins has accused Defendants of having breached their fiduciary duties during the pre-litigation period. In these circumstances, equitable estoppel applies to prevent Nevins from asserting that the Director Defendants are not valid CADERA directors.

FN61. *See* Section I *supra*.

FN62. This situation is unlike others where the court has found a party's reliance unreasonable. *See, e.g., Progressive Int'l Corp. v. E.I. Du Pont de Nemours & Co.*, 2002 WL 1558382, at *7 (Del.Ch. July 9, 2002) (discussing cases where courts have found sophisticated parties' reliance on representations that are "inconsistent with a negotiated contract, when that contract contains a provision explicitly disclaiming reliance upon such outside representations" unreasonable). Before the September 12, 2001 meeting, there were no inconsistent terms or other indicators that would have caused the Director Defendants to question Nevins's assertions that they were valid CADERA directors. When the defect in the July 16, 2000 Written Consent was brought to the Board's attention at the September 12, 2001 meeting, the directors and members of CADERA promptly acted upon the advice of their counsel to cure the defect. Moreover, Nevins, having learned of the action taken to cure the defect by at least the October 3, 2001 meeting, continued to attend meetings where Director Defendants participated as directors without objecting to the validity of their positions. *See* Section II.A.2 *supra*.

*11 Nevins suggests that it was CADERA's attorneys' silence regarding missing signatures on the July 16, 2000 Written Consent that caused it to be defective. The Court finds this argument without merit. As Executive Director and Chairman of the Board of CADERA, Nevins bears at least some responsibility for the defect in the July 16, 2000 Written Consent. It is not necessary, however, to determine who was ultimately at fault for not obtaining Kolodny and Whitla's signatures. The law is clear that even "[u]nintentional conduct which induces reliance of another to his detriment is sufficient to create an estoppel." [FN63] Nevins believed that he had made the Director Defendants proper directors through the July 16, 2000 Written Consent. Nevins's misrepresentations, whether intentional or not, misled the Director Defendants to believe that they were valid CADERA directors. The Director Defendants reasonably relied on Nevins's consistent representations and conduct up to October 2002 indicating that they were CADERA directors to their detriment. [FN64] Thus, even if Nevins did not know of the defect in the July 16, 2000 Written Consent, he is still equitably estopped from asserting that the Director Defendants are not valid CADERA directors.

FN63. *Kojro v. Sikorski*, 267 A.2d 603, 607 (Del.Super.1970).

FN64. *See* Pre-Trial Order II, ¶ 61-62, 65, 68, 72-73, 75-79, 81, 83- 84; JDX 64.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d 2005 WL 1089025 (Del.Ch.)
(Cite as: 2005 WL 1089025 (Del.Ch.))

Page 12

Nevins also argues that Defendants' actions at the August 1 through October 24, 2001 meetings were void rather than voidable. While Nevins is correct that estoppel does not apply in situations "where the corporate contract or action approved by the directors or stockholders is illegal or void," [FN65] the disputed actions in this case were merely voidable. [FN66] Therefore, Nevins is estopped from claiming that the Director Defendants are not valid CADERA directors.

FN65. *Waggoner*, 581 A.2d at 1136-37.

FN66. *See* discussion *supra* Section II.A.1.

### B. Was Nevins's Removal Valid?

Nevins is not entirely estopped, however, from requesting a determination of whether he is a valid CADERA director. Section 225(a) allows the Court to "determine the validity of any ... removal or resignation of any director ... or officer of any corporation." At the October 24, 2001 meeting, Nevins was removed both as a director and an officer of CADERA. Nevins argues that his removal as an officer was improper because the Director Defendants were not valid directors. He argues that his removal as a director was improper because Tinker, as well as the Director Defendants, were not valid members of CADERA. Finally, Nevins argues that the vote to remove him from his positions was invalid because he was disenfranchised when the Board did not permit him to vote. Defendants respond first that the Director Defendants became valid CADERA directors at the September 12, 2001 meeting. They also argue that Tinker and the Director Defendants were made valid CADERA members at the August 22, 2001 meeting. Finally, Defendants contend that even if, as Nevins contends, the Director Defendants are not valid CADERA directors and, along with Tinker, not valid CADERA members, a majority of the remaining uncontested directors and members of CADERA still voted to remove Nevins from his positions.

*12 For the reasons discussed above, the Court has determined that the Director Defendants are valid CADERA directors and that they and Tinker are valid CADERA members. Accordingly, the Court concludes that Nevins's challenges to his removal based on the identity of the CADERA members and directors are without merit. The only argument relating to Nevins's removal that merits further analysis is his disenfranchisement claim.

#### 1. The October 24, 2001 meeting

It is undisputed that all members and directors of CADERA were present at the October 24, 2001 meeting and that notice for the meeting was sufficient. Schuler presented his conclusions regarding Nevins's questionable expenditures of CADERA's grant money. Based on Schuler's letter to him dated September 15, 2001, Nevins had ample notice that the Board would be meeting to discuss termination of his positions at CADERA in October 2001. At the October 3, 2001 meeting, which Nevins attended, the time for the October 24, 2001 meeting was set. At the October 24, 2001 meeting, Nevins was given an opportunity to defend himself.

Defendants claim that they asked Nevins to leave before any vote took place because they considered him an interested party. It is well settled that a director is considered interested when "a corporate decision will have a materially detrimental impact on a director, but not on the corporation and the stockholders. In such circumstances, a director cannot be expected to exercise his or her independent business judgment without being influenced by the adverse personal consequences resulting from the decision." [FN67] The decision to remove Nevins from his position as Executive Director, a paid position at CADERA, arguably had a materially detrimental impact on Nevins, but not the Corporation. Therefore, with regard to the Board vote to remove him as an officer, Nevins may have been an interested director. In any event, the Board may have committed a procedural error in refusing to let Nevins participate in the vote on whether he should be terminated as Executive Director of the Corporation. The evidence presented, however, suggests no improper purpose or bad faith motivation of the Board in asking Nevins to leave before the vote on that resolution.

FN67. *Rales v. Blasband*, 634 A.2d 927, 936 (Del.1993).

The Board's removal of Nevins as a director is more problematic. Defendants argue that the Board had the power to take that action. Nevins contends that members, rather than directors, must remove directors and that, in his capacity as a member of CADERA, he was improperly prevented from voting. Section 141(k) of the DGCL states that directors may be removed with or without cause by a majority of the shares of the company. [FN68] "[B]y negative implication intended by the draftsmen, directors do not have the authority to remove other directors." [FN69] Furthermore, the CADERA bylaws provide that "[d]irectors may be removed, with or without

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d 2005 WL 1089025 (Del.Ch.)
(Cite as: 2005 WL 1089025 (Del.Ch.))

Page 13

cause, as provided from time to time by the Delaware Statutes as then in effect." [FN70] Thus, the CADERA members, including Nevins, had the right to vote to remove Nevins as a director.

> FN68. 8 *Del. C.* § 141(k). The reference to "shares" is deemed to refer to members of CADERA under 8 *Del. C.* § 141(j).
>
> FN69. *Rohe v. Reliance Training Network, Inc.,* 2000 WL 1038190, at *11 n. 30 (Del.Ch. July 21, 2000). *See also Stroud v. Milliken Enter., Inc.,* 585 A.2d 1306, 1309 (Del.Ch. Mar.18, 1988) ("Generally, directors do not have power under Delaware law to remove fellow directors."), *appeal dismissed,* 552 A.2d 476 (Del.1989).
>
> FN70. Art. III, ¶ 11. Defendants argue that the inclusion of this provision in Article III entitled "Board of Directors" indicates that removal of directors is a power given to directors rather than members under CADERA's bylaws. Such a reading is inconsistent with the language of the provision itself, which states that directors may be removed in accordance with Delaware law. Delaware law does not permit directors to remove other directors. *See Rohe,* 2000 WL 1038190, at *11 n. 30.

*13 Nevins argues that the facts of this case require application of the *Blasius* standard of review to invalidate the votes to remove him from his positions at CADERA. [FN71] The *Blasius* review is generally applied where: "i) a stockholder vote or action by stockholder consent is imminent or threatened; and ii) the board purposely thwarts the opportunity for that vote or action to take place or takes steps to reverse the likely result (e.g., by reducing the voting power of a particular stockholder)." [FN72] Neither situation is present in this case. No credible evidence presented to the Court suggests that Defendants intended to entrench themselves or reverse the result of the votes to remove Nevins from his positions at CADERA. In fact, all members and directors of CADERA other than Nevins voted in favor of removing him. While Nevins argues that Kolodny "was swayed by the majority of the board when voting on actions related to [Nevins]," [FN73] a fuller reading of Kolodny's testimony reveals no basis for finding that his vote was improperly coerced. Though, after the October 24, 2001 meeting, Kolodny decided that not all of Nevins's expenses questioned in Schuler's report were necessarily unrelated to CADERA, he also testified that he was never misled with regard to those expenses. Moreover, Kolodny's belated change of opinion related only to Schuler's report. Kolodny testified that the Board never misrepresented any fact to him to persuade him to vote in favor of Nevins's removal. [FN74] Defendants contend that because the remaining six members and directors unanimously voted to remove Nevins from his positions at CADERA, even if Nevins had been permitted to vote in his favor, the result of the votes would have remained unchanged and therefore the October 24, 2001 votes should still stand. While Defendants' "no harm, no foul" type argument regarding the validity of the votes to remove Nevins is appealing given the particular facts of this case, "slippery slope" concerns noted by the court in *McKesson Corp. v. Derdiger* cause me to view it with caution. [FN75] Moreover, because Nevins's claims are barred by laches and acquiescence or ratification as discussed below, the Court need not decide whether the *Blasius* standard of review applies in this case.

> FN71. *See Blasius Indus., Inc. v. Atlas Corp.,* 564 A.2d 651 (Del.Ch.1988).
>
> FN72. *In re Gaylord Container Corp. S'holders Litig.,* 753 A.2d 462, 487 (Del.Ch.2000). *See also Stroud v. Grace,* 606 A.2d 75, 91-92 (Del.1992).
>
> FN73. POB at 33.
>
> FN74. *See* JDX 113 at 187-88.
>
> FN75. 793 A.2d 385, 394 (Del.Ch.2002).

The Court expresses no opinion on the merits of the Board's charge in October 2001 that Nevins owed CADERA approximately $55,000, except to find that Nevins has not shown that, based on the information available at that time, the charge was made in bad faith or as a pretext for an improper motive. [FN76] Even assuming that Nevins spent those funds properly on CADERA business, the evidence supports an inference that he failed to maintain appropriate records from the point of view of a well run, non-profit corporation dependent primarily on government funding.

> FN76. Defendants initially asserted a counterclaim against Nevins to recover that amount on grounds of misappropriation of corporate assets, waste and fraud on the Corporation. Defendants pursued that claim

until August 2, 2004, when they voluntarily dismissed it.

2. Nevins's claim against his removal is barred by laches and acquiescence or ratification

Regardless of the validity of the directors and members' October 24, 2001 votes to remove Nevins from his positions at CADERA, Nevins's challenge to the votes is barred by the doctrines of laches and acquiescence or ratification. [FN77] As discussed above, to successfully claim the defense of laches Defendants must demonstrate that: (1) Nevins knew (or should have known) of his rights or claim; (2) unreasonably delayed in challenging the vote; and (3) Defendants materially changed their position or otherwise materially relied on Nevins's delay. [FN78]

> FN77. Nevins has not shown that either of the challenged votes at the October 24, 2001 meeting were beyond the authority of the Corporation or the product of fraud. Therefore, those actions are merely voidable, not void. *See* Section II.A.1 *supra*.
>
> FN78. *See Gotham Partners,* 714 A.2d at 104; *Stengel,* 2001 WL 221512, at *6.

*14 Nevins knew, or should have known, of his rights with regard to the October 24, 2001 vote. Nevins attended the meeting and knew Defendants intended to consider his employment status. In this particular situation, while best practices and general business ethics suggest that Nevins should have recused himself from the votes, he did have a right to vote. As the founder, Chairman of the Board and Executive Director of CADERA, Nevins had at least constructive knowledge of CADERA's bylaws and his rights as a member. This inference is further supported by the fact that at the October 24, 2001 meeting Nevins objected to not being permitted to vote. Therefore, Nevins knew, or should have known, as of October 24, 2001 about his claim that he was improperly denied a vote.

Nevins did not bring this action until October 15, 2002--approximately one year after the contested votes. "An essential element for application of the doctrine of laches is a finding of unreasonable delay." [FN79] In *Stengel v. Rotman,* the court found that a delay of one and a half months constituted unreasonable delay when raising a "technical objection" to the validity of an election. [FN80] The Court finds that Nevins's delay of over a year in challenging his removal is unreasonable. Laches is not determined by the mere passage of time, rather it must be shown that an inequity resulted due to the delay in raising the claim. [FN81] In this case, had Nevins promptly brought a suit challenging his removal as a CADERA officer and director, the Board could have retaken the votes, allowing Nevins to participate. There is no reason to believe the outcome would have been any different. Defendants materially relied on Nevins's delay. By waiting a year to bring suit, Nevins jeopardized all of the actions taken by the Board during that year. [FN82] Therefore, the Court finds that Nevins's claim that the October 24, 2001 votes to remove him from his positions at CADERA were invalid because he was not permitted to vote is barred by laches.

> FN79. *Harman v. Masoneilan Int'l, Inc.,* 442 A.2d 487, 503 (Del.1982) (citing *Shanik v. White Sewing Mach. Corp.,* 19 A.2d 831 (Del.1941)).
>
> FN80. 2001 WL 221512, at *7.
>
> FN81. *See Skouras v. Admiralty Enter., Inc.,* 386 A.2d 674, 682 (Del.Ch.1978).
>
> FN82. In addition to the administration of CADERA's core programs, such actions included active litigation regarding Nevins's unemployment benefits and proposing a resolution to dissolve the Corporation.

Nevins's claim is also barred by acquiescence or ratification. To establish the defense of acquiescence Defendants must show that, in addition to the first two elements of laches discussed above, Nevins "freely d[id] what amounts to recognition of the complained of act; or ... act[ed] in a manner inconsistent with the subsequent repudiation, which leads the other party to believe the act has been approved." [FN83] Acquiescence "properly speaks of assent by words or conduct during the progress of a transaction, while ratification suggests an assent after the fact." [FN84] "[R]atification may be implied from conduct, as well as expressed by words. Conscious intent is not an element, nor does ratification require a change of position or prejudice." [FN85] Thus, "[w]here the conduct of a complainant, subsequent to the transaction objected to, is such as reasonably to warrant the conclusion that he has accepted or adopted it, his ratification is implied through his acquiescence." [FN86]

> FN83. *Cantor Fitzgerald,* 2000 WL 307370, at *24.

Not Reported in A.2d  
2005 WL 1089025 (Del.Ch.)  
**(Cite as: 2005 WL 1089025 (Del.Ch.))**

Page 15

> FN84. *Frank v. Wilson & Co.*, 32 A.2d 277, 283 (Del.1943).
>
> FN85. *Id.* (internal citations omitted).
>
> FN86. *Id. See also Papaioanu v. Comm'rs of Rehoboth*, 186 A.2d 745, 750 (Del.Ch.1962).

*15 Nevins's behavior after the October 24, 2001 votes to remove him warrants the conclusion that he accepted the votes and, as such, demonstrates his ratification through acquiescence. As established above, Nevins was aware of all material facts regarding the October 24, 2001 votes. After being informed of the result of the votes, Nevins did not object to their validity on the ground that he was not permitted to vote. In fact, he did not object to the validity of the votes at all. [FN87] Even when Nevins continued to contest the validity of the expenditures he made from CADERA's federal grants and seek back pay he claimed CADERA owed him, he did not complain of being denied the opportunity to vote or contend that he was still an officer or director. [FN88] Though ratification generally implies a voluntary and positive act, "inaction alone may amount to a positive act." [FN89] No evidence has been presented that Nevins participated in, or requested to participate in, Board meetings or decisions after October 24, 2001. Moreover, in an email dated November 1, 2001, Nevins wrote "I hope that Carolyn [Tinker], Frank [Kolodny], George [Bryan] and Vicki [Irving] chose [sic] to remain with CADERA for a long time, at least to keep the rest of the newer Board members on course, and that each of you play a very careful role in adding new members to the Board." [FN90] This conduct is inconsistent with Nevins's subsequent challenge to the validity of his removal based on the fact that he was not permitted to vote. Thus, Nevins's claim that the October 24, 2001 votes to remove him from his positions at CADERA were invalid is also barred by acquiescence or ratification.

> FN87. That is, of course, until the filing of this suit on October 15, 2002, approximately one year later.
>
> FN88. *See, e.g.*, JDX 62, 64, 66, 70.
>
> FN89. *Frank*, 32 A.2d at 283.
>
> FN90. JDX 64.

### C. Attorneys' Fees

Both sides have requested that the Court award sanctions in connection with the prosecution and defense of this action, respectively. Under the "American Rule" courts generally do not award attorneys' fees to the prevailing party. The court, however, has discretion to award attorneys' fees in certain special circumstances. Those special circumstances are limited to:

(1) cases where fees are authorized by statute,
(2) cases where the applicant creates a common fund or non-monetary benefit for the benefit of others,
(3) cases where the underlying (pre-litigation) conduct of the losing party was so egregious as to justify an award of attorneys' fees as an element of damages, and
(4) cases where the court finds that the litigation was brought in bad faith or that a party's bad faith conduct increased the costs of litigation. [FN91]

> FN91. *Arbitrium (Cayman Is.) Handels AG v. Johnston*, 705 A.2d 225, 231 (Del.Ch.1997), *aff'd*, 720 A.2d 542 (Del.1998) (citing *Barrows v. Bowen*, 1994 WL 514868, at *1 (Del.Ch. Sept.7, 1994)).

In this case only the third and fourth exceptions arguably apply.

Focusing first on Defendants' request for fees, the Court does not find Nevins's pre-litigation conduct so egregious as to justify an award of attorneys' fees as an element of damages, or that Nevins brought this suit in bad faith. Though, given Nevins's contribution to the defect in the July 16, 2000 Written Consent and years of representations that the Director Defendants were valid Board members, a § 225 action may not have been advisable, such action cannot be characterized as having been brought in bad faith. [FN92] The fact that Nevins did not succeed, after trial, in obtaining the relief he sought does not render him liable for attorneys' fees.

> FN92. *See Cantor Fitzgerald, L.P. v. Cantor*, 2001 WL 536911, at *4 (Del.Ch. May 11, 2001) ("No single definition for "bad faith" in this context exists and each determination will turn on the special facts of the particular case.").

*16 In support of their cross motions for sanctions, [FN93] each side accused the other of bad faith conduct during this action that increased the costs of litigation. This Court expects civility among parties,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d  
2005 WL 1089025 (Del.Ch.)  
**(Cite as: 2005 WL 1089025 (Del.Ch.))**

Page 16

even when such parties are *pro se*. Nevins made unnecessary and repeated personal attacks on Defendants' counsel, in a few cases even after he was informed that they must stop. Those actions were inappropriate. The Court recognizes, however, that it is difficult for a *pro se* litigant to become familiar with the law as well as the procedures involved in trying a case. The manner in which Nevins conducted himself in the courtroom and with opposing attorneys improved significantly by the time of trial and continued through closing arguments. As is evident from his numerous submissions, Nevins strenuously believes that Defendants wrongfully deprived him of a central role in CADERA, which he founded. That belief predictably gave rise to strident accusations in Nevins's papers. Although the Court has concluded that Nevins's allegations of bad faith conduct by Defendants in regard to matters relevant to this § 225 action were unfounded, his allegations did not exceed the bounds of vigorous advocacy. Similarly, certain action by Defendants' counsel relating to document production and other pretrial activities were less than ideal, but fall within the range of conduct sometimes attendant to hard-fought litigation. Considering all the circumstances of this case, I do not find that either side engaged in conduct sufficiently egregious as to warrant an award of sanctions or attorneys fees.

> FN93. Plaintiff's Motion to Award Sanctions; Defendants' Cross Motion for Sanctions. Both were filed on July 30, 2004.

### III. CONCLUSION

For the reasons discussed above, the Court denies the relief sought in Nevins's Complaint under 8 *Del. C.* § 225 and grants a declaratory judgment in favor of Defendants as follows:

1. The Director Defendants (Bryan, Schuler and Irving) are valid directors of CADERA;
2. The Director Defendants and Tinker are valid members of CADERA;
3. Schuler is the Chairman of the Board of CADERA; and
4. Newell is the President of CADERA.

The Court also denies the parties' cross motions for sanctions and denies Nevins's motion for reargument, except to the extent that this Memorandum Opinion clarifies the grounds for the Court's decision that Director Defendants and Tinker are valid members of CADERA.

IT IS SO ORDERED.

2005 WL 1089025 (Del.Ch.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.