IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SYMBOL TECHNOLOGIES INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 05-146 (GMS) |
| | ) | |
| INTERMEC TECHNOLOGIES CORP., | ) | |
| | ) | |
| Defendant. | ) | |

**INTERMEC'S ANSWERING BRIEF IN OPPOSITION TO
SYMBOL'S MOTION FOR JUDGMENT ON THE PLEADINGS (D.I. 11)**

MORRIS, NICHOLS, ARSHT & TUNNELL
Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
Leslie A. Polizoti (#4299)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
   *Attorneys for Intermec Technologies Corp.*

OF COUNSEL:
Frederick A. Lorig
Bruce R. Zisser
BRIGHT & LORIG
633 West Fifth Street
Suite 3330
Los Angeles, CA 90071
(213) 627-7774

Carson Veach
Leland W. Hutchinson, Jr.
Jennifer Fitzgerald
FREEBORN & PETERS LLP
311 South Wacker Drive, Suite 3000
Chicago, IL 60606
(312) 360-6000

June 1, 2005

i.

## TABLE OF CONTENTS

Page

TABLE OF CITATIONS ........................................................................... ii

INTRODUCTION ...................................................................................... 1

NATURE AND STAGE OF THE PROCEEDING ................................... 4

SUMMARY OF ARGUMENT ................................................................. 5

STATEMENT OF FACTS ........................................................................ 6

    A.    The OEM Agreement. ................................................................. 6

    B.    The Matrics Action. ................................................................... 7

    C.    Symbol's March 10 Offensive. ................................................. 8

    D.    Intermec's Counterclaims. ......................................................... 9

    E.    Symbol's Wisconsin Action. ..................................................... 9

ARGUMENT .............................................................................................. 10

    I.    THE LEGAL STANDARD. ...................................................... 10

    II.    SYMBOL HAD NO RIGHT TO TERMINATE THE OEM
        AGREEMENT ON MARCH 10, 2005. ....................................... 10

    III.    SYMBOL -- NOT INTERMEC -- MATERIALLY
        BREACHED THE OEM AGREEMENT. .................................... 12

    IV.    INTERMEC'S COUNTERCLAIMS IN THE SYMBOL
        PATENT ACTION DID NOT RATIFY SYMBOL'S
        MATERIAL BREACH. ............................................................... 14

    V.    INTERMEC'S COUNTERCLAIMS IN THE SYMBOL
        PATENT ACTION DO NOT ESTOP IT FROM SEEKING
        DAMAGES FOR SYMBOL'S MATERIAL BREACHES
        OF CONTRACT. .......................................................................... 15

CONCLUSION ........................................................................................... 16

ii.

TABLE OF CITATIONS

Page(s)

Cases

*Brandin v. Gottlieb,*
    2000 WL 1005954 (Del. Ch. 2000)    13

*Chase Manhattan Bank v. Iridium Africa Corp.,*
    197 F. Supp. 2d 120 (D. Del. 2002)    14

*DeMarie v. Neff,*
    2005 WL 89403 (Del. Ch., Jan. 12, 2005)    13

*Dunkin' Donuts Inc. v. Gav-Stra Donuts, Inc.,*
    139 F. Supp. 2d 147 (D. Mass. 2001)    14

*Fatovic v. Chrysler Corporation,*
    2003 WL 21481012 (Del. Super., Feb. 28, 2003)    16

*Hudson v. D&V Mason Contractors, Inc.,*
    252 A.2d 166 (Del. Super. 1969)    13

*Inst. for Scientific Info., Inc. v. Gordon & Breach,*
    931 F.2d 1002 (3d Cir. 1991)    10

*Mele v. Fed. Reserve Bank of N.Y.,*
    359 F.3d 251 (3d Cir. 2004)    10

*Moore Business Forms, Inc. v. Cordant Holdings Corp.,*
    1998 WL 71836 (Del. Ch. 1998)    13

Statutes and Rules

8 *Del. C.* § 261    7

Fed. R. Civ. P. 12(c)    4, 10

Fed. R. Civ. P. 25(c)    7

TABLE OF CITATIONS (cont'd.)

<u>Other Authorities</u>

13 CORBIN ON CONTRACTS § 67.8                                    13, 16

28A C.J.S. *Election of Remedies* § 2                               16

RESTATEMENT (SECOND) OF CONTRACTS (§ 378)                          16

1.

## INTRODUCTION

The motion for judgment on the pleadings filed by Symbol Technologies Inc. ("Symbol") has things backwards. As alleged in the counterclaims of Intermec Technologies Corp. ("Intermec") (D.I. 5), it was Symbol -- not Intermec -- that breached ¶ 18.k of the OEM Agreement, by, *inter alia*, filing a patent infringement lawsuit against Intermec on March 10, 2005. On the other hand, it is undisputed that Intermec *never* asserted any claim of patent infringement against Symbol until after Symbol had breached the OEM Agreement between Symbol and Intermec by suing Intermec on March 10. In fact, it is Symbol that has asserted patent infringement after patent infringement action in this Court and, more recently (for forum-shopping purposes), in Wisconsin, as discussed below.

In August 2003, Symbol and Intermec entered into an OEM Agreement under which Symbol agreed to supply certain products (laser scan engines) to Intermec. In late 2004, Symbol acquired a company called Matrics, Inc. ("Matrics"). At that time, Intermec IP Corporation ("Intermec IP"), an Intermec subsidiary, had a patent infringement action pending against Matrics in this Court. *Intermec IP Corp. v. Matrics, Inc.*, C.A. No. 04-357 (GMS) ("the Matrics Action").

After Symbol acquired Matrics, it threatened to terminate the OEM Agreement if Intermec did not drop the Matrics Action. On March 10, 2005, Symbol took a number of actions to seek to bring Intermec to its knees. First, Symbol gave Intermec notice that it intended to terminate the OEM Agreement effective April 9, 2005. Second, Symbol filed its complaint in this action (D.I. 1), seeking a declaration that it had the right to terminate the OEM Agreement. Third, Symbol filed an action against Intermec in this Court for infringement of four patents, in

2.

*Symbol Technologies Inc. v. Intermec Technologies Corp.*, C.A. No. 05-147 (SLR) ("the Symbol Patent Action").[1]

Symbol now readily admits that nothing about the Matrics Action was a breach of ¶ 18.k of the OEM Agreement. Symbol nevertheless argues that it properly terminated the OEM Agreement pursuant to ¶ 9.c. Symbol is wrong. The Matrics Action was brought against Matrics by Intermec IP. Neither of those companies was a party to the OEM Agreement. Moreover, even Intermec IP had not asserted a claim for patent infringement against Symbol as of March 10, 2005.

Nevertheless, on March 10, 2005, Symbol advised Intermec that it "intend[ed] to terminate the OEM Agreement upon the expiration of thirty days from the date hereof . . .," i.e., April 9, 2005 (D.I. 5 at ¶ 27). In a filing with the SEC the next day, Symbol confirmed that "it had notified Intermec on March 10, 2005 of its "intention to terminate, effective April 9, 2005" (*id.*). Symbol, however, filed the Symbol Patent Action on March 10, 2005. Thus, even if Symbol had had a basis to terminate the OEM Agreement -- which it did not -- it materially breached that agreement by suing before the purported termination date. Symbol has acknowledged in its brief that such a violation of ¶ 18.k of the OEM Agreement "itself constitute[s] a material and total breach of the Agreement" (D.I. 14 at 10).

Symbol's material breach excused any further performance of the OEM Agreement by Intermec. On March 23, 2005, Intermec counterclaimed in this action for Symbol's breach of the OEM Agreement (D.I. 5). On the same day, because of Symbol's material breach of the OEM Agreement, Intermec counterclaimed in the Symbol Patent Action

---

[1]    Symbol marked that action as related to prior litigation before Chief Judge Robinson, and the case was assigned to her.

3.

for infringement of six patents (C.A. No. 05-147, D.I. 6).  Throughout its brief, Symbol refers to

that counterclaim as the "Intermec Patent Action," as though Intermec had filed an action against

Symbol, rather than a counterclaim to the patent infringement action earlier filed by Symbol.

Intermec's March 23, 2005 counterclaim in the Symbol Patent Action did not

breach the OEM Agreement.  Intermec's post-March 10 actions were also neither a ratification

of Symbol's breach or an estoppel.  Once Symbol had breached, Intermec was free to

counterclaim.

When Intermec did not drop the Matrics Action, Symbol sought to turn up the

heat again by filing yet another patent infringement action against Intermec -- this time in the

Western District of Wisconsin, where neither party is incorporated or located.  *Symbol

Technologies Inc. v. Intermec Technologies Corp.*, C.A. No. 05-C-0256-C.  Now, Symbol steps

its attack up again.  Even though it was Symbol that breached the OEM Agreement by filing the

Symbol Patent Action, Symbol argues on this motion -- with no basis -- that it was Intermec that

somehow breached that agreement by counterclaiming against Symbol.

Symbol's motion for judgment on the pleadings has no merit and should be

denied.

4.

## NATURE AND STAGE OF THE PROCEEDING

On June 7, 2004, Intermec IP sued Matrics for infringement of four patents relating to radio frequency identification ("RFID"). The Matrics Action is currently pending before this Court. Months after the action had been filed, Symbol acquired Matrics for $230 million and threatened to terminate the OEM Agreement unless Intermec discontinued the Matrics Action (D.I. 5 at ¶ 25). When Intermec declined to do so, on March 10, 2005, Symbol gave Intermec notice that it intended to terminate the OEM Agreement effective on April 9, 2005 (*id*. at ¶ 27). The same day, Symbol filed the Complaint in this action seeking a declaratory judgment that it was entitled to terminate the OEM Agreement (D.I. 1).

On March 23, Intermec filed an answer and counterclaims (D.I. 5). In Count I, Intermec requested a declaration that Symbol had no right to terminate the OEM Agreement (*id*.). In Counts II-IV, Intermec alleged that Symbol had materially breached the OEM Agreement by its improper termination; by filing the Symbol Patent Action; and by refusing to honor its Frozen Release Commitment under the Agreement (a counterclaim that Symbol mentions only in the introduction of its brief and nowhere else) (*id*.). On April 12, 2005, Symbol replied to the counterclaims (D.I. 9).

On May 17, 2005, Symbol moved under Rule 12(c) for judgment on the pleadings (D.I. 11).[2] This is Intermec's brief in opposition to that motion.

---

[2]     Symbol filed its opening brief on May 17, 2005 (D.I. 12). Two days later, it filed a corrected brief (D.I. 14). Citations herein are to the corrected brief.

5.

## SUMMARY OF ARGUMENT

1.     This is not a proper motion for judgment on the pleadings.  Intermec has set forth six pages of specific allegations about Symbol's breaches of the OEM Agreement.  Symbol has denied Intermec's allegations and asserted affirmative defenses.  Allegations of breach of contract met by denials and defenses do not provide a basis for judgment on the pleadings.

2.     Symbol had no right to terminate the OEM Agreement on March 10, 2005.  Symbol acknowledges that Intermec had not breached ¶ 18.k.  Symbol also had no right to terminate under ¶ 9.c.  Neither Intermec IP nor Matrics were parties to the OEM Agreement, and neither Intermec nor Intermec IP had asserted any claim of patent infringement against Symbol as of March 10, 2005.

3.     Symbol materially breached the OEM Agreement by purporting to terminate it, by filing the Symbol Patent Action in violation of ¶ 18.k, and by failing to provide product, as required by that Agreement.

4.     Because Symbol's material breach excused Intermec's performance under the OEM Agreement, Intermec's counterclaims in the Symbol Patent Action did not breach that Agreement.

5.     Intermec's counterclaims in the Symbol Patent Action did not ratify Symbol's material breach.

6.     Intermec's counterclaims in the Symbol Patent Action do not estop it from seeking damages for Symbol's material breaches of contract.

6.

## STATEMENT OF FACTS

### A.    The OEM Agreement.

In August 2003, Intermec and Symbol entered into a supply contract (the "OEM Agreement") that required Symbol to sell to Intermec laser scan engines for use in barcode readers, scanning integrated terminals and wearable scanning systems (D.I. 5 at ¶ 21). The OEM Agreement became effective on January 1, 2004 and runs until December 31, 2006, with automatic one year renewal terms, unless a party provides notice of its intent not to renew (*id.*).

Paragraph 1.f of the Agreement defines the parties as Symbol and Intermec. Neither Intermec IP nor Matrics have ever been a party to the Agreement.

Paragraph 9.c of the Agreement provides (*id.* at ¶ 23):

Patent Assertion. If either Party asserts a bona fide claim of patent infringement outside the scope of the covenant of Section 18.k against the other Party, then such other party may in addition to any other rights and remedies it may have at law or in equity terminate this Agreement upon thirty (30) days prior written notice.

Paragraph 18.k of the Agreement provides (*id.* at ¶ 24):

Covenants. During the Term of the Agreement each Party shall not sue (or bring a counterclaim against) the other party for any claim of infringement (referring to any provisions of 35 USC 271 or comparable foreign provisions) of any patent, whether now or hereinafter in existence, against or relating to any product except for (i) bar code readers to the extent that they use CCD sensor technology, and (ii) RFID Reader Products and RFID Tags except to the extent that they read bar codes. In the event of a breach of this section, the non-breaching party shall have, without limitation of any other right or remedies it may have, the right to terminate this Purchase Agreement by giving the breaching party at least thirty days (30) written notice (which may be extended upon mutual agreement of the parties) of its intention to terminate; provided, however, that if the parties settle the patent infringement lawsuit that accounted for the breach of this Section during such thirty days (30) period, then this Agreement shall not be terminated on the date specified in such notice.

**B.    The Matrics Action.**

In June 2004, Intermec IP, a subsidiary of Intermec, sued Matrics for infringement of four RFID patents in the Matrics Action. In its brief, Symbol simply ignores the fact that Intermec IP is not a party to the OEM Agreement or to this action. Symbol later acquired Matrics and then merged Matrics into itself on October 29, 2004, and asked this Court to substitute Symbol for Matrics as the defendant.

Under 8 *Del. C.* § 261 and Fed. R. Civ. P. 25(c), notwithstanding the merger, that lawsuit could proceed against Matrics. Symbol, however, took the position that the merger converted the Matrics Action into a suit against Symbol (D.I. 5 at ¶ 25). Symbol threatened to terminate the OEM Agreement pursuant to ¶ 9.c unless Intermec discontinued the suit (*id.*). When Intermec refused, Symbol asked Intermec IP to stipulate to the substitution of Symbol as the defendant (Ex. A). Intermec IP agreed to do so only if Symbol would agree not to use the substitution as a basis for terminating the OEM Agreement (Ex. B). Symbol rejected that proposal.

Symbol then filed a motion to substitute itself as the defendant on January 25, 2005 (C.A. No. 04-357, D.I. 31). Intermec IP opposed that motion (*id.* at D.I. 39), and pointed out that "Symbol contends that maintaining this lawsuit against Symbol after the merger may permit Symbol to terminate [the OEM Agreement] with Intermec Technologies" (*id.* at D.I. 39, p.1). Only after Symbol had breached the OEM Agreement on March 10, 2005 did Intermec IP withdraw its opposition to that motion on March 15, 2005 (*id.* at D.I. 47). Intermec IP first asserted a claim of patent infringement against Symbol on April 20, 2005 (*id.* at D.I. 53), more than a month after Symbol had breached the OEM Agreement.

8.

### C.    Symbol's March 10 Offensive.

On March 10, 2005, Symbol reiterated its position that the Matrics Action was "now a suit by Intermec against Symbol," and gave notice "that Symbol intends to terminate the OEM Agreement upon the expiration of thirty days from the date hereof..." (D.I. 5 at ¶ 27).  In a Form 8-K filed with the SEC, Symbol reported that "it had notified Intermec on March 10, 2005 of its intention to terminate, effective April 9, 2005" the OEM Agreement (*id.*).  Symbol issued a press release the next day, announcing falsely that "[e]ffective yesterday, Symbol terminated its supplier relationship with Intermec for laser scan engines" (Ex. C).

Symbol also filed this action on March 10, asking this Court to declare that Symbol was entitled to terminate the OEM Agreement because of the lawsuit Intermec IP had filed against Matrics prior to Symbol's acquisition of Matrics (D.I. 1).  Although Symbol acknowledges that the Matrics Action was not a breach of the OEM Agreement (D.I. 14 at 7 n.5),[3] it claims that somehow it was nevertheless entitled to terminate under ¶ 9.c.

Also on March 10, Symbol filed the Symbol Patent Action, alleging that Intermec infringed four patents (C.A. No. 05-147 (SLR), D.I. 1).  Symbol's filing of that action was a material breach of ¶ 18.k of the OEM Agreement, which did not permit any infringement suits except if they were related to bar code readers using CCD technology or to RFID technology.

As Symbol notes in its brief, its March 10 flurry of activity -- the notice of intent to terminate, the filing of this action and the filing of the Symbol Patent Action -- was not coincidental.  Negotiations between the parties had just broken off (*see* D.I. 14 at 5).

---

[3]     Symbol's brief states: "The Delaware RFID Action is for alleged infringement of 'RFID Reader products and RFID Tags' hence, it is not a breach of Paragraph 18.k of the Agreement for Intermec to assert such claims against Symbol" (D.I. 14 at 7, n.5).

9.

### D.    Intermec's Counterclaims.

On March 23, Intermec filed counterclaims in this action (D.I. 5).  In Count I, Intermec requested a declaration that Symbol had no right to terminate the OEM Agreement (*id*.).  In Counts II-IV, Intermec alleged that Symbol breached the OEM Agreement by its improper termination, by filing the Symbol Patent Action, and by refusing to honor its Frozen Release Commitment under the OEM Agreement (*id*.).

On March 23, 2005, Intermec also filed an Answer in the Symbol Patent Action. Intermec's affirmative defenses alleged that Symbol's claims were in breach of the OEM Agreement (C.A. No. 05-147, D.I. 6 at ¶ 20).  Noting Symbol's breach of the OEM Agreement, Intermec also counterclaimed against Symbol on its own patents (*id.* at ¶ 34).

Ignoring its own earlier suit against Intermec, Symbol claims that Intermec's later March 23 counterclaim was a breach of the OEM Agreement (Ex. D to D.I. 9).  Symbol asserted that, by counterclaiming in the Symbol Patent Action, Intermec had "instituted suit against Symbol" for patent infringement, and that that action "constitutes a breach of the OEM Agreement," purportedly providing Symbol with an additional reason to terminate the OEM Agreement effective April 24, 2005 (*id*.).

### E.    Symbol's Wisconsin Action.

As noted above, on April 28, 2005, Symbol again sued Intermec, this time in the Western District of Wisconsin, for infringement of two more patents.  *Symbol Technologies Inc. v. Intermec Technologies Corp.*, C.A. No. 05-C-0256-C.  Symbol seeks a trial of that action in February 2006 -- ten months after filing.  Intermec has moved to transfer that action to this Court.

10.

## ARGUMENT

**I.    THE LEGAL STANDARD.**

In deciding a motion under Fed. R. Civ. P. 12(c), a court must accept the factual allegations of the pleading as true and draw all reasonable factual inferences in the light most favorable to the non-movant.  *Mele v. Fed. Reserve Bank of N.Y.*, 359 F.3d 251, 253 (3d Cir. 2004).  Judgment on the pleadings should be granted only if the movant "clearly establish[es] that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Inst. for Scientific Info., Inc. v. Gordon & Breach*, 931 F.2d 1002, 1005 (3d Cir. 1991).  Symbol has failed to meet its burden.

This is not a proper motion for judgment on the pleadings.  In paragraphs 18-55 of its Answer and Counterclaims (D.I. 5), Intermec set forth six pages of specific allegations about Symbol's breaches of the OEM Agreement.  In its Reply (D.I. 9), Symbol has denied Intermec's allegations and asserted affirmative defenses.  Allegations of breach of contract met with denials and defenses do not provide a basis for judgment as a matter of law.  They form a contract dispute that needs to be litigated.  Moreover, Symbol has asked the Court to resolve Intermec's breach of contract claims on the pleadings without the development of a factual record and without even having the contract before it.

**II.    SYMBOL HAD NO RIGHT TO TERMINATE THE OEM AGREEMENT ON MARCH 10, 2005.**

Symbol acknowledges that ¶ 18.k of the OEM Agreement gave it no right of termination (D.I. 14 at 7 n.5).  Symbol admits that Intermec was not in breach of the Agreement on March 10, 2005 as a result of the Matrics Action or for any other reason.

11.

Symbol argues that ¶ 9.c of the Agreement permitted it to give notice of termination if Intermec had asserted RFID patent infringement claims against Symbol, such as those asserted by Intermec IP against Matrics in the Matrics Action. Symbol, however, ignores the critical differences between Intermec and Intermec IP and between itself and Matrics. Symbol and Intermec negotiated an agreement that specifically defined "Party" to mean Symbol and Intermec. Although the parties could have done so, they did not define "Party" as those companies and their subsidiaries and affiliates. Under the plain language of the OEM Agreement, even a patent suit by Intermec IP directly against Symbol would not trigger any termination right under ¶ 9.c.

In any event, Intermec IP did not file any patent infringement claim against Symbol. Intermec IP sued Matrics. Symbol asks the Court simply to look at the amended caption of the Matrics Action and conclude that Symbol is "unquestionably" the "sole defendant" there (*id.*). But it continues to ignore the identity of the *plaintiff* in that action.

Paragraph 9.c can be triggered only when one Party "asserts" an infringement claim against the other. Intermec IP sued Matrics -- not Symbol -- for patent infringement in June 2004 when Matrics was unrelated to Symbol. Symbol then acquired Matrics and sought to inject itself into the case to force Intermec IP to assert a claim against it, in an effort to create some basis to argue that it had the right to terminate the Agreement. Intermec IP opposed that effort and was still opposing it on March 10. It was not until after March 10 -- when Symbol breached the Agreement -- that Intermec IP withdrew its opposition to Symbol becoming a defendant in the Matrics Action. Intermec IP did not assert a claim of patent infringement against Symbol until April 20, 2005 (C.A. 04-357 (GMS), D.I. 53).

There is no dispute that, as of March 10, 2005, Intermec IP had asserted a patent infringement claim only against Matrics -- and not against Symbol. Thus, even under its reading of the OEM Agreement, Symbol had no right to terminate that Agreement. Its attempt to do so was a breach of the OEM Agreement, as Intermec has alleged. Symbol plainly is not entitled to judgment on the pleadings on that issue.

### III.    SYMBOL -- NOT INTERMEC -- MATERIALLY BREACHED THE OEM AGREEMENT.

Symbol materially breached the OEM Agreement on March 10, 2005 by filing the Symbol Patent Action. Symbol sued Intermec at that time, even though, by its own account, its purported termination of the Agreement would not take effect until April 9, 2005.

As Symbol itself reported to the SEC, Symbol did not purport to terminate the Agreement until April 9, 2005. Nevertheless, on March 10, 2005, in violation of ¶ 18.k of the Agreement, Symbol sued Intermec for infringement of four patents in the Symbol Patent Action. The Agreement was unquestionably still in effect on March 10, 2005, when Symbol filed the Symbol Patent Action. Symbol simply has no argument that its filing of the Symbol Patent Action was not "a material and total breach of the Agreement . . . thereby excusing [Intermec's] performance" (D.I. 14 at 10). It is difficult to understand how Symbol can even argue that Intermec's filing of its patent infringement counterclaim could be a breach of the Agreement.

Symbol has acknowledged that the filing of a lawsuit -- such as the Symbol Patent Action -- that violates ¶ 18.k "would itself constitute a material and total breach of the Agreement," and that such a "material" breach excuses performance by the non-breaching party (D.I. 14 at 10). In effect, Symbol has admitted that it materially breached the OEM Agreement on March 10, 2005. Symbol's motion for judgment on the pleadings on that issue is baseless.

13.

As a matter of law, as shown by Symbol's own cited authorities, once Symbol breached ¶ 18.k by filing the Symbol Patent Action, Intermec's further performance under that paragraph was excused. *DeMarie v. Neff*, 2005 WL 89403, *4 (Del. Ch., Jan. 12, 2005); *see also Hudson v. D&V Mason Contractors, Inc.*, 252 A.2d 166, 170 (Del. Super. 1969) ("As a general rule the party first guilty of a material breach of contract cannot complain if the other party subsequently refuses to perform."); *Brandin v. Gottlieb*, 2000 WL 1005954, *21 (Del. Ch. 2000) (quoting *Hudson*); *Moore Business Forms, Inc. v. Cordant Holdings Corp.*, 1998 WL 71836, *8 (Del. Ch. 1998) (unpublished).

Thus, Symbol's arguments that Intermec's counterclaims were a breach of the Agreement are totally without merit (D.I. 14 at 10).  Symbol's claim, without citation, that "if Symbol had improperly terminated as Intermec contends, Intermec had an obligation to perform and abide by its own obligations, if it desires to seek damages for breach of contract" is simply incorrect (*id*. at 11).  A party that wrongfully terminates a contract itself first breaches it.  But, this Court need not reach that issue to decide this motion.  Symbol filed the Symbol Patent Action without waiting thirty days, and thus clearly materially breached the OEM Agreement on March 10, excusing Intermec's performance, whether or not its March 10 termination notice was proper.

A party whose performance is excused may "accept" that the contract is ended while preserving his right to sue for damages (13 CORBIN ON CONTRACTS § 67.8):

> [T]he injured party is in fact discharged from further duty under the contract by the other party's breach…. Because of the breach, the injured party has a right to cancel the contract and sue for damages or seek other relief…. When the injured party asserts his own freedom from the duty to perform further, the injured party is merely attempting to avoid further loss from the other's wrong – a duty the law often requires.  In addition to canceling the

> agreement, the injured party may engage in reasonable endeavors
> to avoid or reduce injury....

*See also Dunkin' Donuts Inc. v. Gav-Stra Donuts, Inc.*, 139 F. Supp. 2d 147, 155 (D. Mass. 2001) ("In evaluating a breach of contract, the Court must determine 'whether the defendant's breach entitled the plaintiff merely to recovery for that breach while continuing to abide by the contract, or was so material in all the circumstances as to justify the plaintiff in throwing the contract over and suing for the total breach.'").

Symbol's unsupported assertion that, after it breached the contract, Intermec had to continue to perform its contractual obligations in order to seek damages for Symbol's breach is simply wrong. Symbol's material breach excused Intermec's performance under the Agreement and Intermec's counterclaims in the Symbol Patent Action did not breach the Agreement.

## IV.     INTERMEC'S COUNTERCLAIMS IN THE SYMBOL PATENT ACTION DID NOT RATIFY SYMBOL'S MATERIAL BREACH.

To establish ratification, Symbol must show that Intermec's conduct after Symbol's purported termination "is such as reasonably to warrant the conclusion that [Intermec has] accepted or adopted it." *Chase Manhattan Bank v. Iridium Africa Corp.*, 197 F. Supp. 2d 120, 130 (D. Del. 2002). Thirteen days after Symbol breached the OEM Agreement on March 10, 2005, Intermec counterclaimed for a declaration that Symbol was not entitled to terminate and for breach of contract -- making clear its position that Symbol's purported termination was improper and a material breach (D.I. 5).

Moreover, Symbol simply ignores Intermec's allegations in the Symbol Patent Action. Intermec expressly alleged that "Symbol's claims are in breach of a covenant not to sue included in an August, 2003 OEM Agreement between Symbol and Intermec" (C.A. No. 05-147,

D.I. 6 at ¶ 20).  Intermec also alleged that it was asserting its patent infringement counterclaim "[i]f, notwithstanding Symbol's breach of its covenant not to sue . . ., the Court permits the action to go forward" (*id.*, D.I. 6 at ¶ 34).  Those allegations were hardly a ratification of Symbol's breach.  They were just the opposite.

### V.    INTERMEC'S COUNTERCLAIMS IN THE SYMBOL PATENT ACTION DO NOT ESTOP IT FROM SEEKING DAMAGES FOR SYMBOL'S MATERIAL BREACHES OF CONTRACT.

Symbol argues that Intermec elected to "disaffirm" or "rescind" the OEM Agreement by counterclaiming against Symbol for patent infringement in the Symbol Patent Action (D.I. 14 at 13, 14).  As a result, Symbol argues, the doctrine of election of remedies prohibits Intermec from seeking the benefits of the OEM Agreement by suing for breach of contract damages (*id.* at 13).  Again, Symbol is wrong.[4]

Once Symbol breached the OEM Agreement by filing the Symbol Patent Action, Intermec treated the Agreement as breached, excusing Intermec's further performance and giving Intermec a claim to damages for a total and material breach.  Such conduct did not elect any remedy helpful to Symbol's current position.  Just the opposite.  If Intermec elected anything after Symbol's March 10 breach, it was to hold Symbol totally responsible for having breached the OEM Agreement.

The (disfavored) election of remedies doctrine provides that a party that chooses a remedy is free to pursue other remedies unless they are inconsistent and unless the other party

---

[4]    Symbol again makes the unsupported statement that "[i]f Intermec believed that Symbol's termination was improper, its remedy was to treat the contract as still in effect and pursue remedies for breach" (D.I. 14 at 13).  As explained *supra* at p.13, that assertion is incorrect.

16.

materially changes its position in reliance on the choice of remedy. RESTATEMENT (SECOND) OF

CONTRACTS (§ 378); 28A C.J.S. *Election of Remedies* § 2 ("The doctrine of election of remedies

is given little, if any, validity in federal practice and is considered to be a harsh doctrine that is

not favored..."). The election of remedies doctrine does not bar Intermec from treating its

performance as excused because of Symbol's material breach and also suing for damages for that

breach.[5]  13 CORBIN ON CONTRACTS § 67.8(7) (explaining that it is not an "'election' of a

remedy" when an injured party treats its performance as excused under a contract because of the

other party's material breach).

## CONCLUSION

For the foregoing reasons, Symbol's Motion for Judgment on the Pleadings (D.I.

11) should be denied.

MORRIS, NICHOLS, ARSHT & TUNNELL

*/s/ Jack B. Blumenfeld*

Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
Leslie A. Polizoti (#4299)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
*Attorneys for Intermec Technologies Corp.*

---

[5]     Symbol cites *Fatovic v. Chrysler Corporation*, 2003 WL 21481012 (Del. Super., Feb. 28, 2003), in support of its argument that a party who disaffirms a contract makes an election and cannot pursue other inconsistent remedies (D.I. 14 at 13). In *Fatovic*, however, the plaintiffs' attorney notified the seller that plaintiffs rescinded the sales contract. *Id*. at *2. When plaintiffs sued the seller for, *inter alia*, breach of contract, the court held that they had elected the remedy of rescission and could not pursue other inconsistent remedies: "Plaintiffs made a decisive act by rescinding the purchase contract and thus, are barred from pursuing other claims based on their ownership of the Jeep or their rights under the rescinded purchase contract." *Id*. at *3. That Intermec treated its performance as excused did not operate as an election to rescind the OEM Agreement.

17.

OF COUNSEL:

Frederick A. Lorig
Bruce R. Zisser
BRIGHT & LORIG
633 West Fifth Street
Suite 3330
Los Angeles, CA 90071
(213) 627-7774

Carson Veach
Leland W. Hutchinson, Jr.
Jennifer Fitzgerald
FREEBORN & PETERS LLP
311 South Wacker Drive, Suite 3000
Chicago, IL 60606
(312) 360-6000

June 1, 2005
466473

## CERTIFICATE OF SERVICE

I hereby certify that on June 1, 2005, I electronically filed the foregoing document with the Clerk of Court using CM/ECF, which will send notification of such filing to Jack B. Blumenfeld, Eric J. Lobenfeld, Karen L. Pascale, Ira J. Schaefer and Tedd W. Van Buskirk.

I also certify that on June 1, 2005, I caused to be served true and correct copies of the foregoing document on the following in the manner indicated below:

### BY HAND

Karen L. Pascale
BOUCHARD MARGULES & FRIEDLANDER, P.A.
222 Delaware Avenue, Suite 1400
Wilmington, DE 19801

### BY FEDERAL EXPRESS

Eric J. Lobenfeld
Ira J. Schaefer
HOGAN & HARTSON L.L.P.
875 Third Avenue
New York, NY 10022

_____/s/ Leslie A. Polizoti_____
Leslie A. Polizoti (#4299)
MORRIS, NICHOLS, ARSHT AND TUNNELL
(302) 658-9200
lpolizoti@mnat.com