IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SYMBOL TECHNOLOGIES INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 05-146 (GMS) |
| | ) | |
| INTERMEC TECHNOLOGIES CORP., | ) | |
| | ) | |
| Defendant. | ) | |

### INTERMEC'S MOTION FOR LEAVE TO FILE AN ANSWER AND AMENDED AND SUPPLEMENTAL COUNTERCLAIMS

Pursuant to Fed.R.Civ.P. 15(a), Defendant, Intermec Technologies Corp., moves for leave to amend and supplement its counterclaims in order to add allegations that Symbol breached the OEM Agreement by suing Intermec for patent infringement in Wisconsin and by asserting that OEM products of Intermec, which are immune from suit pursuant to the OEM Agreement, infringe Symbol's patents. Pursuant to D. Del. LR 15.1, attached as Exhibit A is the Defendants proposed Answer and Amended and Supplemental Counterclaims and one copy thereof, and attached as Exhibit B is a form of the Answer and Amended and Supplemental Counterclaims indicating the respects in which it differs from the original pleading.

The basis for this motion is as follows:

1.     On March 10, 2005, Symbol gave Intermec notice that effective on April 9, 2005, it intended to terminate the OEM Agreement between Symbol and Intermec (*id.* at ¶ 27). On the same day, Symbol filed the Complaint in this action seeking a declaratory judgment that it was entitled to terminate the OEM Agreement (D.I. 1).

2.      On March 23, Intermec filed an answer and counterclaims (D.I. 5).  In Count I, Intermec requested a declaration that Symbol had no right to terminate the OEM Agreement (*id.*).  In Counts II-IV, Intermec alleged that Symbol had materially breached the OEM Agreement by its improper termination; by filing a patent infringement action against Intermec in the District of Delaware; and by refusing to honor its Frozen Release Commitment under the Agreement (*id.*).

3.      Intermec now seeks to add additional claims for breach on contract based on Symbol's additional breaches of the OEM agreement by 1) filing a patent infringement suit against Intermec in Wisconsin on April 28, 2005[1] and 2) asserting infringement claims against products that are expressly immune from suit under paragraph 9.d of the OEM Agreement and that they covenanted not to sue Intermec on in paragraph 2.b of the OEM Agreement.

4.      Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend "shall be freely given when justice so requires."  As the Supreme Court stated in *Foman v. Davis*, 371 U.S. 178, 181-82 (1962):

> If the underlying facts or circumstances relied upon by a [party] may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.

Leave to amend should thus be granted absent "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment. *Id.* at 182.

5.      The same standard applies to Rule 15(d), which governs the filing of supplemental pleadings.  *The Procter & Gambler Co. v. McNeil-PPC, Inc.*, C.A. No. 98-361-

---

[1]      On July 14, the Court in Wisconsin granted Intermec's motion to transfer that case to Delaware.

GMS, mem. op. at 2 (D. Del. Dec. 7, 1998) ("absent a finding of 'undue delay, bad faith or dilatory motive on the party of the movant [or] undue prejudice to the opposing party,' an appropriate exercise of a court's discretion should result in affording a plaintiff the opportunity to test its claim on the merits").

6.    Here there has been no bad faith, delay or dilatory motive by Intermec in connection with this motion.   Additionally, there can be no prejudice to Symbol from the proposed amendment given the early stage of the litigation.   Indeed, no scheduling order is yet in place and discovery has not yet begun.

*    *    *

For the foregoing reasons, Intermec requests that its motion for leave to file its Answer and Amended and Supplemental Counterclaims be granted.

MORRIS, NICHOLS, ARSHT & TUNNELL

*/s/ Maryellen Noreika*

Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
Morris, Nichols, Arsht, & Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347
(302) 658-9200
mnoreika@mnat.com
Attorneys for Defendant Intermec Technologies Corp.

OF COUNSEL:

Frederick A. Lorig
Bruce R. Zisser
BRIGHT & LORIG
633 West Fifth Street
Suite 3330
Los Angeles, CA  90071
(213) 627-7774

Carson P. Veach
Leland W. Hutchinson, Jr.
Jennifer Fitzgerald
FREEBORN & PETERS LLP
311 South Wacker Drive
Suite 3000
Chicago, IL  60606
(312) 360-6000

July 21, 2005
475110

## RULE 7.1.1 CERTIFICATE

Intermec sent Symbol the proposed amended and supplemental pleading on July 15, 2005 and requested Symbol's consent to filing it. Symbol has not stated any basis for opposing entry of the pleading, but has not consented to the filing, stating that the amendment should wait until after their pending motion for judgment on the pleadings is decided.

*/s/ Maryellen Noreika (#3208)*

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| SYMBOL TECHNOLOGIES, INC., a Delaware Corporation, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 05-146-GMS |
| INTERMEC TECHNOLOGIES CORP., a Washington Corporation, | ) ) ) | **DEMAND FOR JURY TRIAL** |
| Defendant. | ) ) | |

<u>**ANSWER AND AMENDED AND SUPPLEMENTAL COUNTERCLAIMS
OF INTERMEC TECHNOLOGIES CORP.**</u>

Defendant Intermec Technologies Corp. ("Intermec") responds to the numbered paragraphs of the Complaint filed by Symbol Technologies, Inc. ("Symbol") as follows:

1.      Admitted that this is an action for a declaratory judgment and that this Court has subject matter jurisdiction; otherwise, denied.

2.      Admitted.

3.      Admitted.

4.      Intermec is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 4.

5.      Admitted.

6.      Admitted that Intermec purchases certain products from Symbol, as defined in the OEM Agreement, the terms of which speak for themselves.

7.      Admitted that Paragraph 9.c of the OEM Agreement, which speaks for itself, provides that "[i]f either Party asserts a bona fide claim of patent infringement outside the

scope of the covenant of Section 18.k against the other Party, then such other party may in addition to any other rights and remedies it may have at law or in equity terminate this Agreement upon thirty (30) days prior written notice."

        8.     Denied.

        9.     Denied.

        10.    Intermec is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 10.

        11.    Admitted that on March 10, 2005 Symbol notified Intermec that "Matrics ceased to exist as a separate entity and instead was merged into Symbol," demanded that Intermec "discontinue the Delaware Action," and informed Intermec that "Symbol intends to terminate the OEM Agreement upon the expiration of thirty days" from March 10, 2005; otherwise, denied.

        12.    Admitted that Intermec has not discontinued the Delaware Action against Matrics and does not intend to discontinue that action, and has advised Symbol of its belief that Symbol does not have the right to terminate the OEM Agreement; otherwise, denied.

        13.    Intermec repeats and re-alleges each and every allegation contained in paragraphs 1 through 12 hereof, as if fully set forth herein.

        14.    Admitted.

        15.    Denied that Symbol is entitled to any remedy at law at otherwise.

        16.    Denied.

## AFFIRMATIVE DEFENSES

        17.    Intermec was relieved of its obligations under the OEM Agreement (and Symbol was not) as a result of Symbol's filing of patent infringement actions against Intermec in

this Court (C.A. No. 05-147-SLR) and in the United States District Court for the Western District of Wisconsin (Case No. 05 C 256 C) in material breach of paragraphs 2.b, 18.d and 18.k of the OEM Agreement, based upon false assertions that Intermec had sued Symbol for patent infringement, and without regard to paragraph 9.c of the OEM Agreement.

18.     Symbol's claim is barred by its unclean hands.

## COUNTERCLAIMS

For its counterclaims against Symbol, Intermec alleges:

19.     Intermec is incorporated under the laws of the State of Washington, and has its principal place of business at 6001 36th Avenue West, Everett, Washington 98203.

20.     Upon information and belief, Symbol is incorporated under the laws of the State of Delaware, and has its principal place of business at One Symbol Plaza, Holtsville, New York 11742.

21.     This Court has jurisdiction over these counterclaims pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201-2202 and 28 U.S.C. § 1332(a) in that Intermec and Symbol are citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

## BACKGROUND FACTS

22.     In August, 2003, Intermec and Symbol entered into a contract (the "OEM Agreement") whereby Symbol agreed to sell products to Intermec, and Intermec agreed to purchase products from Symbol, for use in cabled and cordless hand held laser bar code readers, scanning integrated terminals, and wearable scanning systems.  The OEM Agreement became effective on January 1, 2004 and runs until December 31, 2006, with automatic one year renewal terms, unless a party provides notice of its intent not to renew.

23.    On June 7, 2004, Intermec IP Corp. ("Intermec IP"), a subsidiary of Intermec, sued Matrics, Inc. ("Matrics") in this Court for infringement of four patents related to radio frequency identification ("RFID") technology in Civil Action No. 04-357-GMS (the "Delaware RFID Action").  Matrics filed an Answer and Counterclaim on July 13, 2004 and an Amended Answer and Counterclaim on January 21, 2005.

24.    Paragraph 9.c of the OEM Agreement provides:

Patent Assertion. If either Party asserts a bona fide claim of patent infringement outside the scope of the covenant of Section 18.k against the other Party, then such other party may in addition to any other rights and remedies it may have at law or in equity terminate this Agreement upon thirty (30) days prior written notice.

25.    Paragraph 18.k of the OEM Agreement provides:

Covenants. During the Term of the Agreement each Party shall not sue (or bring a counterclaim against) the other party for any claim of infringement (referring to any provisions of 35 USC 271 or comparable foreign provisions) of any patent, whether now or hereinafter in existence, against or relating to any product except for (i) bar code readers to the extent that they use CCD sensor technology, and (ii) RFID Reader Products and RFID Tags except to the extent that they read bar codes.  In the event of a breach of this section, the non-breaching party shall have, without limitation of any other right or remedies it may have, the right to terminate this Purchase Agreement by giving the breaching party at least thirty days (30) written notice (which may be extended upon mutual agreement of the parties) of its intention to terminate; provided, however, that if the parties settle the patent infringement lawsuit that accounted for the breach of this Section during such thirty days (30) period, then this Agreement shall not be terminated on the date specified in such notice.

26.    By letter dated December 16, 2004, Symbol advised Intermec that, subsequent to the filing of the Delaware RFID Action, Symbol had acquired all of the stock of Matrics and that Matrics had been merged into Symbol.  Symbol also asserted that the continuation of Intermec IP's Delaware RFID Action against Matrics was "now a suit by

Intermec against Symbol" and that Symbol might terminate the OEM Agreement pursuant to Paragraph 9.c if Intermec IP did not discontinue the Delaware RFID Action against Matrics.

27.    By letter dated December 20, 2004, Intermec advised Symbol that Intermec IP's continuation of the Delaware RFID Action against Matrics did not give Symbol the right to terminate the OEM Agreement pursuant to paragraph 9.c and that Intermec IP did not intend to discontinue the Delaware RFID Action against Matrics.

28.    By letter dated March 10, 2005, Symbol advised Intermec again that it had acquired Matrics and that Matrics had been merged into Symbol. Symbol also repeated that the action against Matrics was "now a suit by Intermec against Symbol." Symbol concluded the letter by saying that it "hereby gives notice that Symbol intends to terminate the OEM Agreement upon the expiration of thirty days from the date hereof...." In a Form 8-K filed with the Security and Exchange Commission on or about March 10, 2005, Symbol reported that "it had notified Intermec on March 10, 2005 of its intention to terminate, effective April 9, 2005" the OEM Agreement.

29.    On March 10, 2005, Symbol filed an action in this Court, Civil Action No. 05-147-SLR ("the Symbol Patent Case") alleging that Intermec had infringed certain patents and issued a press release stating that it had filed the Symbol Patent Case in response to the action against Matrics.

30.    On April 28, 2005, Symbol filed an action in the United States District Court for the Western District of Wisconsin, Civil Action No. 05 C 256 C ("the Wisconsin Patent Case") alleging that Intermec had infringed certain other patents owned or otherwise controlled by Symbol.

31.    Paragraph 18.d of the OEM Agreement provides:

No Licenses.  No right or license is granted by this Agreement . . . except for a limited immunity from suit for infringement of the claims of Symbol patents to the extent they cover the OEM Products, for Buyer to make, have made, use, sell, import and export the OEM Products described herein solely in the Territory and solely in the Field of Use.

OEM Products are defined in ¶ 1.c of the OEM Agreement as products described in Exhibit 2 to the OEM Agreement into which laser scan engines purchased from Symbol are incorporated. Exhibit 2 defines "OEM Products" to include "Cordless Hand Held Laser Barcode Readers" and "Scanning Integrated Terminals" "configured for portable operation with or without radio or other remote wireless communication."  Paragraph 2.b of the OEM Agreement provides that "Symbol covenants not to assert any claim of infringement of Symbol Patent Rights against the OEM Product."  "Symbol Patent Rights" are defined in ¶ 1.i of the OEM Agreement to mean all patents owned or controlled by Symbol.

32.    Symbol, in both the Symbol Patent Case and in the Wisconsin Patent Case, has asserted that OEM Products infringe the asserted patents.

33.    Pursuant to ¶ 18.d of the OEM Agreement, Intermec is immune from suit with respect to those OEM Products, and pursuant to ¶ 2.b of the OEM Agreement, Symbol has covenanted not to assert any claim of infringement against those products.

## COUNT I
## DECLARATORY JUDGMENT

34.    Intermec repeats and re-alleges each and every allegation of paragraphs 18-33 hereof.

35.    Intermec IP's filing and maintenance of the patent infringement action against Matrics did not give Symbol the right to terminate the OEM Agreement prior to

December 31, 2006. Symbol had no right under paragraph 9.c. of the OEM Agreement to terminate that agreement.

36.     Intermec was relieved of its obligations under the OEM Agreement (and Symbol was not) as a result of Symbol's filing of the Symbol Patent Case and the Wisconsin Patent Case in material breach of paragraphs 2.b, 18.d and 18.k of the OEM Agreement, based upon false assertions that Intermec had sued Symbol for patent infringement, and without regard to paragraph 9.c of the OEM Agreement.

37.     An actual and justiciable controversy exists between Intermec and Symbol concerning the parties' rights under the OEM Agreement.

38.     Intermec is entitled to a declaration pursuant to 28 U.S.C. § 2201 that Symbol had no right to terminate the OEM Agreement.

39.     Intermec has no adequate remedy at law.

## COUNT II
## BREACH OF CONTRACT

40.     Intermec repeats and re-alleges each and every allegation of paragraphs 18-39 hereof.

41.     Symbol's purported termination of the OEM Agreement, when it had no right of termination, constitutes a breach of that agreement.

42.     Intermec has been damaged by Symbol's breach of the OEM Agreement in an amount yet to be determined and will continue to be damaged unless and until Symbol's breach is enjoined by this Court.

43.     Under the OEM Agreement, Intermec is entitled to recover its costs, including reasonable attorneys' fees, for this dispute, which arises out of, or is related to, the OEM Agreement.

44.    Intermec has no adequate remedy at law.

**COUNT III**
**BREACH OF CONTRACT**

45.    Intermec repeats and re-alleges each and every allegation of paragraphs 18-44 hereof.

46.    Symbol covenanted, in Paragraph 18.k of the OEM Agreement, not to sue Intermec for any claim of infringement of any patent during the term of that agreement, with the exception of RFID and CCD claims.

47.    On March 10, 2005, Symbol filed the Symbol Patent Case against Intermec in this Court, asserting that Intermec products infringe four Symbol wireless communication patents, and seeking damages for the alleged infringement, as well as injunctive relief, in the Symbol Patent Case.

48.    Symbol's filing of the Symbol Patent Case on March 10, 2005 was a breach of Paragraph 18.k of the OEM Agreement.

49.    As set forth above, Paragraph 9.c of the OEM Agreement provides that, under certain circumstances, a party may "terminate this Agreement upon thirty (30) days prior written notice."    Symbol had no right to terminate the OEM Agreement pursuant to Paragraph 9.c on March 10, 2005.  However, even if Symbol had been entitled to terminate the OEM Agreement, it could do so only upon thirty days' prior written notice.

50.    In its March 10, 2005 letter, Symbol purported to give Intermec "notice that Symbol intends to terminate the OEM Agreement upon the expiration of thirty days from the date hereof."  Symbol confirmed in its Form 8-K that the purported termination would be "effective April 9, 2005."

51.    Even if Symbol had been entitled to terminate the OEM Agreement (which it was not), Symbol's filing of the Symbol Patent Case against Intermec occurred prior to the purported termination of the agreement, and Symbol's filing of that action was a breach of Paragraph 18.k of the OEM Agreement.

52.    On April 28, 2005, Symbol filed the Wisconsin Patent Case against Intermec, asserting that Intermec products infringe two Symbol patents and seeking damages for the alleged infringement, as well as injunctive relief in the Wisconsin Patent Case.

53.    Symbol's filing of the Wisconsin Patent Case was a breach of Paragraph 18.k of the OEM Agreement.

54.    Symbol, in both the Symbol Patent Case and in the Wisconsin Patent Case, has asserted that OEM Products infringe the asserted patents.

55.    To the extent that Symbol has asserted that OEM products infringe its patents in the Symbol Patent Case and in the Wisconsin Patent Case, it has breached the OEM Agreement.

56.    Intermec has been damaged by Symbol's breach of the OEM Agreement in an amount yet to be determined, and will continue to be damaged until Symbol's breach is enjoined by this Court.

57.    Under the OEM Agreement, Intermec is entitled to recover its costs, including reasonable attorneys' fees, for this dispute, which arises out of, or is related to, to the OEM Agreement.

58.    Intermec has no adequate remedy at law.

## COUNT IV
## BREACH OF CONTRACT

59.    Intermec repeats and re-alleges each and every allegation of paragraphs 18-58 hereof.

60.    Paragraph 5.a of the OEM Agreement provides for a "Frozen Release Commitment," for quantities of product forecast by Intermec.  Paragraph 9.d of the OEM Agreement provides that the termination of the OEM Agreement "shall not affect or impair the rights, liabilities and obligations of either party to the other under any Frozen Release Commitment for Product existing prior to such expiration or termination, nor relieve either party of any obligation or liability accrued under this Agreement or pursuant to any firm order prior to such expiration or termination."

61.    Symbol has refused to honor its Frozen Release Commitment under the OEM Agreement.

62.    Even if Symbol had a right to terminate the OEM Agreement (which it did not), its failure to comply with its obligations under Paragraph 9.d of the OEM Agreement is a breach of that agreement.

63.    Intermec has been damaged by Symbol's breach of the OEM Agreement in an amount yet to be determined and will continue to be damaged unless and until Symbol's breach is enjoined by this Court.

64.    Under the OEM Agreement, Intermec is entitled to recover its costs, including reasonable attorneys' fees, for this dispute, which arises out of, or is related to, the OEM Agreement.

65.    Intermec has no adequate remedy at law.

## COUNT V
## DECLARATORY JUDGMENT

66.  Intermec repeats and re-alleges each and every allegation of paragraphs 18-65 hereof.

67.  An actual and justiciable controversy exists between Intermec and Symbol concerning the parties' rights under paragraph 18.d of the OEM Agreement.

68.  Intermec is entitled to a declaration pursuant to 28 U.S.C. § 2201 that it is immune from suit for patent infringement with respect to the OEM Products.

69.  Under the OEM Agreement, Intermec is entitled to recover its costs, including reasonable attorneys' fees, for this dispute, which arises out of, or is related to, the OEM Agreement.

70.  Intermec has no adequate remedy at law.

Wherefore, Intermec seeks a judgment:

(a)  Dismissing Symbol's complaint with prejudice;

(b)  Declaring that Symbol had no right to terminate the OEM Agreement on March 10, 2005 or April 9, 2005, and that the OEM Agreement remains in full force and effect;

(c)  Declaring that Intermec is immune from suit with respect to the OEM Products under the OEM Agreement;

(d)  Awarding Intermec damages resulting from Symbol's breach of the OEM Agreement;

(e)  Awarding Intermec its attorneys' fees and costs;

(f)  Enjoining Symbol, its officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them from breaching the OEM Agreement; and

11

(g)    Granting Intermec such other and further relief as the Court shall deem just and proper.

MORRIS, NICHOLS, ARSHT & TUNNELL

/s/ Jack B. Blumenfeld
Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
James W. Parrett (#4292)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
   *Attorneys for Defendant and Counterclaim
   Plaintiff Intermec Technologies Corp.*

OF COUNSEL:

Frederick A. Lorig
Bruce R. Zisser
BRIGHT & LORIG
633 West Fifth Street
Suite 3330
Los Angeles, CA  90071
(213) 627-7774

Carson P. Veach
Leland W. Hutchinson, Jr.
Jennifer Fitzgerald
FREEBORN & PETERS LLP
311 South Wacker Drive, Suite 3000
Chicago, IL 60606
(312) 360-6000

July 21, 2005
468209

12

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| SYMBOL TECHNOLOGIES, INC., a Delaware Corporation, )<br><br>Plaintiff, )<br><br>v. )<br><br>INTERMEC TECHNOLOGIES CORP., a Washington Corporation, )<br><br>Defendant. ) | C.A. No. 05-146-GMS<br><br>**DEMAND FOR JURY TRIAL** |

## ANSWER AND AMENDED AND SUPPLEMENTAL COUNTERCLAIMS OF INTERMEC TECHNOLOGIES CORP.

Defendant Intermec Technologies Corp. ("Intermec") responds to the numbered paragraphs of the Complaint filed by Symbol Technologies, Inc. ("Symbol") as follows:

1. Admitted that this is an action for a declaratory judgment and that this Court has subject matter jurisdiction; otherwise, denied.

2. Admitted.

3. Admitted.

4. Intermec is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 4.

5. Admitted.

6. Admitted that Intermec purchases certain products from Symbol, as defined in the OEM Agreement, the terms of which speak for themselves.

7. Admitted that Paragraph 9.c of the OEM Agreement, which speaks for itself, provides that "[i]f either Party asserts a bona fide claim of patent infringement outside the

scope of the covenant of Section 18.k against the other Party, then such other party may in addition to any other rights and remedies it may have at law or in equity terminate this Agreement upon thirty (30) days prior written notice."

    8.     Denied.

    9.     Denied.

    10.    Intermec is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 10.

    11.    Admitted that on March 10, 2005 Symbol notified Intermec that "Matrics ceased to exist as a separate entity and instead was merged into Symbol," demanded that Intermec "discontinue the Delaware Action," and informed Intermec that "Symbol intends to terminate the OEM Agreement upon the expiration of thirty days" from March 10, 2005; otherwise, denied.

    12.    Admitted that Intermec has not discontinued the Delaware Action against Matrics and does not intend to discontinue that action, and has advised Symbol of its belief that Symbol does not have the right to terminate the OEM Agreement; otherwise, denied.

    13.    Intermec repeats and re-alleges each and every allegation contained in paragraphs 1 through 12 hereof, as if fully set forth herein.

    14.    Admitted.

    15.    Denied that Symbol is entitled to any remedy at law at otherwise.

    16.    Denied.

## AFFIRMATIVE DEFENSES

    17.    Intermec was relieved of its obligations under the OEM Agreement (and Symbol was not) as a result of Symbol's filing of patent infringement actions against Intermec in

this Court (C.A. No. 05-147-SLR) and in the United States District Court for the Western District of Wisconsin (Case No. 05 C 256 C) in material breach of paragraphs 2.b, 18.d and 18.k of the OEM Agreement, based upon false assertions that Intermec had sued Symbol for patent infringement, and without regard to paragraph 9.c of the OEM Agreement.

18.     Symbol's claim is barred by its unclean hands.

## COUNTERCLAIMS

For its counterclaims against Symbol, Intermec alleges:

19.     Intermec is incorporated under the laws of the State of Washington, and has its principal place of business at 6001 36th Avenue West, Everett, Washington 98203.

20.     Upon information and belief, Symbol is incorporated under the laws of the State of Delaware, and has its principal place of business at One Symbol Plaza, Holtsville, New York 11742.

21.     This Court has jurisdiction over these counterclaims pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201-2202 and 28 U.S.C. § 1332(a) in that Intermec and Symbol are citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

## BACKGROUND FACTS

22.     In August, 2003, Intermec and Symbol entered into a contract (the "OEM Agreement") whereby Symbol agreed to sell products to Intermec, and Intermec agreed to purchase products from Symbol, for use in cabled and cordless hand held laser bar code readers, scanning integrated terminals, and wearable scanning systems.  The OEM Agreement became effective on January 1, 2004 and runs until December 31, 2006, with automatic one year renewal terms, unless a party provides notice of its intent not to renew.

3

23.     On June 7, 2004, Intermec IP Corp. ("Intermec IP"), a subsidiary of Intermec, sued Matrics, Inc. ("Matrics") in this Court for infringement of four patents related to radio frequency identification ("RFID") technology in Civil Action No. 04-357-GMS (the "Delaware RFID Action").  Matrics filed an Answer and Counterclaim on July 13, 2004 and an Amended Answer and Counterclaim on January 21, 2005.

24.     Paragraph 9.c of the OEM Agreement provides:

Patent Assertion. If either Party asserts a bona fide claim of patent infringement outside the scope of the covenant of Section 18.k against the other Party, then such other party may in addition to any other rights and remedies it may have at law or in equity terminate this Agreement upon thirty (30) days prior written notice.

25.     Paragraph 18.k of the OEM Agreement provides:

Covenants. During the Term of the Agreement each Party shall not sue (or bring a counterclaim against) the other party for any claim of infringement (referring to any provisions of 35 USC 271 or comparable foreign provisions) of any patent, whether now or hereinafter in existence, against or relating to any product except for (i) bar code readers to the extent that they use CCD sensor technology, and (ii) RFID Reader Products and RFID Tags except to the extent that they read bar codes.  In the event of a breach of this section, the non-breaching party shall have, without limitation of any other right or remedies it may have, the right to terminate this Purchase Agreement by giving the breaching party at least thirty days (30) written notice (which may be extended upon mutual agreement of the parties) of its intention to terminate; provided, however, that if the parties settle the patent infringement lawsuit that accounted for the breach of this Section during such thirty days (30) period, then this Agreement shall not be terminated on the date specified in such notice.

26.     By letter dated December 16, 2004, Symbol advised Intermec that, subsequent to the filing of the Delaware RFID Action, Symbol had acquired all of the stock of Matrics and that Matrics had been merged into Symbol.  Symbol also asserted that the continuation of Intermec IP's Delaware RFID Action against Matrics was "now a suit by

4

Intermec against Symbol" and that Symbol might terminate the OEM Agreement pursuant to Paragraph 9.c if Intermec IP did not discontinue the Delaware RFID Action against Matrics.

27.    By letter dated December 20, 2004, Intermec advised Symbol that Intermec IP's continuation of the Delaware RFID Action against Matrics did not give Symbol the right to terminate the OEM Agreement pursuant to paragraph 9.c and that Intermec IP did not intend to discontinue the Delaware RFID Action against Matrics.

28.    By letter dated March 10, 2005, Symbol advised Intermec again that it had acquired Matrics and that Matrics had been merged into Symbol.  Symbol also repeated that the action against Matrics was "now a suit by Intermec against Symbol."  Symbol concluded the letter by saying that it "hereby gives notice that Symbol intends to terminate the OEM Agreement upon the expiration of thirty days from the date hereof...."  In a Form 8-K filed with the Security and Exchange Commission on or about March 10, 2005, Symbol reported that "it had notified Intermec on March 10, 2005 of its intention to terminate, effective April 9, 2005" the OEM Agreement.

29.    On March 10, 2005, Symbol filed an action in this Court, Civil Action No. 05-147-SLR ("the Symbol Patent Case") alleging that Intermec had infringed certain patents and issued a press release stating that it had filed the Symbol Patent Case in response to the action against Matrics.

30.    On April 28, 2005, Symbol filed an action in the United States District Court for the Western District of Wisconsin, Civil Action No. 05 C 256 C ("the Wisconsin Patent Case") alleging that Intermec had infringed certain other patents owned or otherwise controlled by Symbol.

31.    Paragraph 18.d of the OEM Agreement provides:

No Licenses.  No right or license is granted by this Agreement . . .
except for a limited immunity from suit for infringement of the
claims of Symbol patents to the extent they cover the OEM
Products, for Buyer to make, have made, use, sell, import and
export the OEM Products described herein solely in the Territory
and solely in the Field of Use.

OEM Products are defined in ¶ 1.c of the OEM Agreement as products described in Exhibit 2 to

the OEM Agreement into which laser scan engines purchased from Symbol are incorporated.

Exhibit 2 defines "OEM Products" to include "Cordless Hand Held Laser Barcode Readers" and

"Scanning Integrated Terminals" "configured for portable operation with or without radio or

other remote wireless communication."  Paragraph 2.b of the OEM Agreement provides that

"Symbol covenants not to assert any claim of infringement of Symbol Patent Rights against the

OEM Product."  "Symbol Patent Rights" are defined in ¶ 1.i of the OEM Agreement to mean all

patents owned or controlled by Symbol.

32.    Symbol, in both the Symbol Patent Case and in the Wisconsin Patent

Case, has asserted that OEM Products infringe the asserted patents.

33.    Pursuant to ¶ 18.d of the OEM Agreement, Intermec is immune from suit

with respect to those OEM Products, and pursuant to ¶ 2.b of the OEM Agreement, Symbol has

covenanted not to assert any claim of infringement against those products.

## COUNT I
## DECLARATORY JUDGMENT

34.    Intermec repeats and re-alleges each and every allegation of paragraphs

18-33 hereof.

35.    Intermec IP's filing and maintenance of the patent infringement action

against Matrics did not give Symbol the right to terminate the OEM Agreement prior to

December 31, 2006. Symbol had no right under paragraph 9.c. of the OEM Agreement to terminate that agreement.

36.     Intermec was relieved of its obligations under the OEM Agreement (and Symbol was not) as a result of Symbol's filing of the Symbol Patent Case and the Wisconsin Patent Case in material breach of paragraphs 2.b, 18.d and 18.k of the OEM Agreement, based upon false assertions that Intermec had sued Symbol for patent infringement, and without regard to paragraph 9.c of the OEM Agreement.

37.     An actual and justiciable controversy exists between Intermec and Symbol concerning the parties' rights under the OEM Agreement.

38.     Intermec is entitled to a declaration pursuant to 28 U.S.C. § 2201 that Symbol had no right to terminate the OEM Agreement.

39.     Intermec has no adequate remedy at law.

## COUNT II
## BREACH OF CONTRACT

40.     Intermec repeats and re-alleges each and every allegation of paragraphs 18-39 hereof.

41.     Symbol's purported termination of the OEM Agreement, when it had no right of termination, constitutes a breach of that agreement.

42.     Intermec has been damaged by Symbol's breach of the OEM Agreement in an amount yet to be determined and will continue to be damaged unless and until Symbol's breach is enjoined by this Court.

43.     Under the OEM Agreement, Intermec is entitled to recover its costs, including reasonable attorneys' fees, for this dispute, which arises out of, or is related to, the OEM Agreement.

44.    Intermec has no adequate remedy at law.

## COUNT III
## BREACH OF CONTRACT

45.    Intermec repeats and re-alleges each and every allegation of paragraphs 18-44 hereof.

46.    Symbol covenanted, in Paragraph 18.k of the OEM Agreement, not to sue Intermec for any claim of infringement of any patent during the term of that agreement, with the exception of RFID and CCD claims.

47.    On March 10, 2005, Symbol filed the Symbol Patent Case against Intermec in this Court, asserting that Intermec products infringe four Symbol wireless communication patents, and seeking damages for the alleged infringement, as well as injunctive relief, in the Symbol Patent Case.

48.    Symbol's filing of the Symbol Patent Case on March 10, 2005 was a breach of Paragraph 18.k of the OEM Agreement.

49.    As set forth above, Paragraph 9.c of the OEM Agreement provides that, under certain circumstances, a party may "terminate this Agreement upon thirty (30) days prior written notice."   Symbol had no right to terminate the OEM Agreement pursuant to Paragraph 9.c on March 10, 2005.  However, even if Symbol had been entitled to terminate the OEM Agreement, it could do so only upon thirty days' prior written notice.

50.    In its March 10, 2005 letter, Symbol purported to give Intermec "notice that Symbol intends to terminate the OEM Agreement upon the expiration of thirty days from the date hereof."   Symbol confirmed in its Form 8-K that the purported termination would be "effective April 9, 2005."

51.    Even if Symbol had been entitled to terminate the OEM Agreement (which it was not), Symbol's filing of the Symbol Patent Case against Intermec occurred prior to the purported termination of the agreement, and Symbol's filing of that action was a breach of Paragraph 18.k of the OEM Agreement.

52.    On April 28, 2005, Symbol filed the Wisconsin Patent Case against Intermec, asserting that Intermec products infringe two Symbol patents and seeking damages for the alleged infringement, as well as injunctive relief in the Wisconsin Patent Case.

53.    Symbol's filing of the Wisconsin Patent Case was a breach of Paragraph 18.k of the OEM Agreement.

54.    Symbol, in both the Symbol Patent Case and in the Wisconsin Patent Case, has asserted that OEM Products infringe the asserted patents.

55.    To the extent that Symbol has asserted that OEM products infringe its patents in the Symbol Patent Case and in the Wisconsin Patent Case, it has breached the OEM Agreement.

56.    Intermec has been damaged by Symbol's breach of the OEM Agreement in an amount yet to be determined, and will continue to be damaged until Symbol's breach is enjoined by this Court.

57.    Under the OEM Agreement, Intermec is entitled to recover its costs, including reasonable attorneys' fees, for this dispute, which arises out of, or is related to, to the OEM Agreement.

58.    Intermec has no adequate remedy at law.

## COUNT IV
## BREACH OF CONTRACT

59.     Intermec repeats and re-alleges each and every allegation of paragraphs 18-58 hereof.

60.     Paragraph 5.a of the OEM Agreement provides for a "Frozen Release Commitment," for quantities of product forecast by Intermec. Paragraph 9.d of the OEM Agreement provides that the termination of the OEM Agreement "shall not affect or impair the rights, liabilities and obligations of either party to the other under any Frozen Release Commitment for Product existing prior to such expiration or termination, nor relieve either party of any obligation or liability accrued under this Agreement or pursuant to any firm order prior to such expiration or termination."

61.     Symbol has refused to honor its Frozen Release Commitment under the OEM Agreement.

62.     Even if Symbol had a right to terminate the OEM Agreement (which it did not), its failure to comply with its obligations under Paragraph 9.d of the OEM Agreement is a breach of that agreement.

63.     Intermec has been damaged by Symbol's breach of the OEM Agreement in an amount yet to be determined and will continue to be damaged unless and until Symbol's breach is enjoined by this Court.

64.     Under the OEM Agreement, Intermec is entitled to recover its costs, including reasonable attorneys' fees, for this dispute, which arises out of, or is related to, the OEM Agreement.

65.     Intermec has no adequate remedy at law.

## COUNT V
## DECLARATORY JUDGMENT

66.     Intermec repeats and re-alleges each and every allegation of paragraphs 18-65 hereof.

67.     An actual and justiciable controversy exists between Intermec and Symbol concerning the parties' rights under paragraph 18.d of the OEM Agreement.

68.     Intermec is entitled to a declaration pursuant to 28 U.S.C. § 2201 that it is immune from suit for patent infringement with respect to the OEM Products.

69.     Under the OEM Agreement, Intermec is entitled to recover its costs, including reasonable attorneys' fees, for this dispute, which arises out of, or is related to, the OEM Agreement.

70.     Intermec has no adequate remedy at law.

Wherefore, Intermec seeks a judgment:

(a)     Dismissing Symbol's complaint with prejudice;

(b)     Declaring that Symbol had no right to terminate the OEM Agreement on March 10, 2005 or April 9, 2005, and that the OEM Agreement remains in full force and effect;

(c)     Declaring that Intermec is immune from suit with respect to the OEM Products under the OEM Agreement;

(d)     Awarding Intermec damages resulting from Symbol's breach of the OEM Agreement;

(e)     Awarding Intermec its attorneys' fees and costs;

(f)     Enjoining Symbol, its officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them from breaching the OEM Agreement; and

11

(g)     Granting Intermec such other and further relief as the Court shall deem just and proper.

MORRIS, NICHOLS, ARSHT & TUNNELL

*/s/ Jack B. Blumenfeld*
Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
James W. Parrett (#4292)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
   *Attorneys for Defendant and Counterclaim*
   *Plaintiff Intermec Technologies Corp.*

OF COUNSEL:

Frederick A. Lorig
Bruce R. Zisser
BRIGHT & LORIG
633 West Fifth Street
Suite 3330
Los Angeles, CA  90071
(213) 627-7774

Carson P. Veach
Leland W. Hutchinson, Jr.
Jennifer Fitzgerald
FREEBORN & PETERS LLP
311 South Wacker Drive, Suite 3000
Chicago, IL 60606
(312) 360-6000

July 21, 2005
468209

12

# EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SYMBOL TECHNOLOGIES, INC., a Delaware Corporation, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) |
| INTERMEC TECHNOLOGIES CORP., a Washington Corporation, | ) ) ) |
| Defendant. | ) |

C.A. No. 05-146-GMS

**DEMAND FOR JURY TRIAL**

## ~~ANSWER AND COUNTERCLAIMS OF INTERMEC~~
## ANSWER AND AMENDED AND SUPPLEMENTAL COUNTERCLAIMS
## OF INTERMEC TECHNOLOGIES CORP.

Defendant Intermec Technologies Corp. ("Intermec") responds to the numbered paragraphs of the Complaint filed by Symbol Technologies, Inc. ("Symbol") as follows:

1.     Admitted that this is an action for a declaratory judgment and that this Court has subject matter jurisdiction; otherwise, denied.

2.     Admitted.

3.     Admitted.

4.     Intermec is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 4.

5.     Admitted.

6.     Admitted that Intermec purchases certain products from Symbol, as defined in the OEM Agreement, the terms of which speak for themselves.

7.     Admitted that Paragraph 9.c of the OEM Agreement, which speaks for itself, provides that "[i]f either Party asserts a bona fide claim of patent infringement outside the

scope of the covenant of Section 18.k against the other Party, then such other party may in addition to any other rights and remedies it may have at law or in equity terminate this Agreement upon thirty (30) days prior written notice."

8.      Denied.

9.      Denied.

10.     Intermec is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 10.

11.     Admitted that on March 10, 2005 Symbol notified Intermec that "Matrics ceased to exist as a separate entity and instead was merged into Symbol," demanded that Intermec "discontinue the Delaware Action," and informed Intermec that "Symbol intends to terminate the OEM Agreement upon the expiration of thirty days" from March 10, 2005; otherwise, denied.

12.     Admitted that Intermec has not discontinued the Delaware Action against Matrics and does not intend to discontinue that action, and has advised Symbol of its belief that Symbol does not have the right to terminate the OEM Agreement; otherwise, denied.

13.     Intermec repeats and re-alleges each and every allegation contained in paragraphs 1 through 12 hereof, as if fully set forth herein.

14.     Admitted.

15.     Denied that Symbol is entitled to any remedy at law at otherwise.

16.     Denied.

## AFFIRMATIVE DEFENSES

17.     Intermec was relieved of its obligations under the OEM Agreement (and Symbol was not) as a result of Symbol's filing of patent infringement actions against Intermec in

2

this Court (C.A. No. 05-147-SLR) and in the United States District Court for the Western District of Wisconsin (Case No. 05 C 256 C) in material breach of paragraphs 2.b, 18.d and 18.k of the OEM Agreement, based upon false assertions that Intermec had sued Symbol for patent infringement, and without regard to paragraph 9.c of the OEM Agreement.

18.     17. Symbol's claim is barred by its unclean hands.

## COUNTERCLAIMS

For its counterclaims against Symbol, Intermec alleges:

19.     18. Intermec is incorporated under the laws of the State of Washington, and has its principal place of business at 6001 36th Avenue West, Everett, Washington 98203.

20.     19. Upon information and belief, Symbol is incorporated under the laws of the State of Delaware, and has its principal place of business at One Symbol Plaza, Holtsville, New York 11742.

21.     20. This Court has jurisdiction over these counterclaims pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201-2202 and 28 U.S.C. § 1332(a) in that Intermec and Symbol are citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

## BACKGROUND FACTS

22.     21. In August, 2003, Intermec and Symbol entered into a contract (the "OEM Agreement") whereby Symbol agreed to sell products to Intermec, and Intermec agreed to purchase products from Symbol, for use in cabled and cordless hand held laser bar code readers, scanning integrated terminals, and wearable scanning systems.  The OEM Agreement became effective on January 1, 2004 and runs until December 31, 2006, with automatic one year renewal terms, unless a party provides notice of its intent not to renew.

23.    ~~22.~~ On June 7, 2004, Intermec IP Corp. ("Intermec IP"), a subsidiary of Intermec, sued Matrics, Inc. ("Matrics") in this Court for infringement of four patents related to radio frequency identification ("RFID") technology in Civil Action No. 04-357-GMS (the "Delaware RFID Action").  Matrics filed an Answer and Counterclaim on July 13, 2004 and an Amended Answer and Counterclaim on January 21, 2005.

24.    ~~23.~~ Paragraph 9.c of the OEM Agreement provides:

Patent Assertion. If either Party asserts a bona fide claim of patent infringement outside the scope of the covenant of Section 18.k against the other Party, then such other party may in addition to any other rights and remedies it may have at law or in equity terminate this Agreement upon thirty (30) days prior written notice.

25.    ~~24.~~ Paragraph 18.k of the OEM Agreement provides:

Covenants. During the Term of the Agreement each Party shall not sue (or bring a counterclaim against) the other party for any claim of infringement (referring to any provisions of 35 USC 271 or comparable foreign provisions) of any patent, whether now or hereinafter in existence, against or relating to any product except for (i) bar code readers to the extent that they use CCD sensor technology, and (ii) RFID Reader Products and RFID Tags except to the extent that they read bar codes.  In the event of a breach of this section, the non-breaching party shall have, without limitation of any other right or remedies it may have, the right to terminate this Purchase Agreement by giving the breaching party at least thirty days (30) written notice (which may be extended upon mutual agreement of the parties) of its intention to terminate; provided, however, that if the parties settle the patent infringement lawsuit that accounted for the breach of this Section during such thirty days (30) period, then this Agreement shall not be terminated on the date specified in such notice.

26.    ~~25.~~ By letter dated December 16, 2004, Symbol advised Intermec that, subsequent to the filing of the Delaware RFID Action, Symbol had acquired all of the stock of Matrics and that Matrics had been merged into Symbol.  Symbol also asserted that the continuation of Intermec IP's Delaware RFID Action against Matrics was "now a suit by

Intermec against Symbol" and that Symbol might terminate the OEM Agreement pursuant to Paragraph 9.c if Intermec IP did not discontinue the Delaware RFID Action against Matrics.

27.    ~~26.~~ By letter dated December 20, 2004, Intermec advised Symbol that Intermec IP's continuation of the Delaware RFID Action against Matrics did not give Symbol the right to terminate the OEM Agreement pursuant to paragraph 9.c and that Intermec IP did not intend to discontinue the Delaware RFID Action against Matrics.

28.    ~~27.~~ By letter dated March 10, 2005, Symbol advised Intermec again that it had acquired Matrics and that Matrics had been merged into Symbol.  Symbol also repeated that the action against Matrics was "now a suit by Intermec against Symbol."  Symbol concluded the letter by saying that it "hereby gives notice that Symbol intends to terminate the OEM Agreement upon the expiration of thirty days from the date hereof...."  In a Form 8-K filed with the Security and Exchange Commission on or about March 10, 2005, Symbol reported that "it had notified Intermec on March 10, 2005 of its intention to terminate, effective April 9, 2005" the OEM Agreement.

29.    ~~28.~~ On March 10, 2005, Symbol filed an action in this Court, Civil Action No. 05-147-SLR ("the Symbol Patent Case") alleging that Intermec had infringed certain patents and issued a press release stating that it had filed the Symbol Patent Case in response to the action against Matrics.

30.    On April 28, 2005, Symbol filed an action in the United States District Court for the Western District of Wisconsin, Civil Action No. 05 C 256 C ("the Wisconsin Patent Case") alleging that Intermec had infringed certain other patents owned or otherwise controlled by Symbol.

31.     Paragraph 18.d of the OEM Agreement provides:

No Licenses.  No right or license is granted by this Agreement . . .
except for a limited immunity from suit for infringement of the
claims of Symbol patents to the extent they cover the OEM
Products, for Buyer to make, have made, use, sell, import and
export the OEM Products described herein solely in the Territory
and solely in the Field of Use.

OEM Products are defined in ¶ 1.c of the OEM Agreement as products described in Exhibit 2 to
the OEM Agreement into which laser scan engines purchased from Symbol are incorporated.
Exhibit 2 defines "OEM Products" to include "Cordless Hand Held Laser Barcode Readers" and
"Scanning Integrated Terminals" "configured for portable operation with or without radio or
other remote wireless communication."  Paragraph 2.b of the OEM Agreement provides that
"Symbol covenants not to assert any claim of infringement of Symbol Patent Rights against the
OEM Product."  "Symbol Patent Rights" are defined in ¶ 1.i of the OEM Agreement to mean all
patents owned or controlled by Symbol.

32.     Symbol, in both the Symbol Patent Case and in the Wisconsin Patent
Case, has asserted that OEM Products infringe the asserted patents.

33.     Pursuant to ¶ 18.d of the OEM Agreement, Intermec is immune from suit
with respect to those OEM Products, and pursuant to ¶ 2.b of the OEM Agreement, Symbol has
covenanted not to assert any claim of infringement against those products.

## COUNT I
## DECLARATORY JUDGMENT

34.     29.  Intermec repeats and re-alleges each and every allegation contained
in of paragraphs 18–28 33 hereof.

35.     30.  Intermec IP's filing and maintenance of the patent infringement action
against Matrics did not give Symbol the right to terminate the OEM Agreement prior to

6

December 31, 2006.  Symbol had no right under paragraph 9.c. of the OEM Agreement to terminate that agreement.

36.    Intermec was relieved of its obligations under the OEM Agreement (and Symbol was not) as a result of Symbol's filing of the Symbol Patent Case and the Wisconsin Patent Case in material breach of paragraphs 2.b, 18.d and 18.k of the OEM Agreement, based upon false assertions that Intermec had sued Symbol for patent infringement, and without regard to paragraph 9.c of the OEM Agreement.

37.    31. An actual and justiciable controversy exists between Intermec and Symbol concerning the parties' rights under the OEM Agreement.

38.    32. Intermec is entitled to a declaration pursuant to 28 U.S.C. § 2201 that Symbol had no right to terminate the OEM Agreement.

39.    33. Intermec has no adequate remedy at law.

## COUNT II
## BREACH OF CONTRACT

40.    34. Intermec repeats and re-alleges each and every allegation of paragraphs 18-3339 hereof.

41.    35. Symbol's purported termination of the OEM Agreement, when it had no right of termination, constitutes a breach of that agreement.

42.    36. Intermec has been damaged by Symbol's breach of the OEM Agreement in an amount yet to be determined and will continue to be damaged unless and until Symbol's breach is enjoined by this Court.

43.    37. Under the OEM Agreement, Intermec is entitled to recover its costs, including reasonable attorneys' fees, for this dispute, which arises out of, or is related to, the OEM Agreement.

44.    ~~38.~~ Intermec has no adequate remedy at law.

## COUNT III
## BREACH OF CONTRACT

45.    ~~39.~~ Intermec repeats and re-alleges each and every allegation of paragraphs 18-~~38~~44 hereof.

46.    ~~40.~~ Symbol covenanted, in Paragraph 18.k of the OEM Agreement, not to sue Intermec for any claim of infringement of any patent during the term of that agreement, with the exception of RFID and CCD claims.

47.    ~~41.~~ On March 10, 2005, Symbol filed the Symbol ~~patent case~~Patent Case against Intermec in this Court, asserting that Intermec products infringe four Symbol wireless communication patents, and seeking damages for the alleged infringement, as well as injunctive relief, in the Symbol Patent Case.

48.    ~~42.~~ Symbol's filing of the Symbol Patent Case on March 10, 2005 was a breach of Paragraph 18.k of the OEM Agreement.

49.    ~~43.~~ As set forth above, Paragraph 9.c of the OEM Agreement provides that, under certain circumstances, a party may "terminate this Agreement upon thirty (30) days prior written notice." Symbol had no right to terminate the OEM Agreement pursuant to Paragraph 9.c on March 10, 2005. However, even if Symbol had been entitled to terminate the OEM Agreement, it could do so only upon thirty days' prior written notice.

50.    ~~44.~~ In its March 10, 2005 letter, Symbol purported to give Intermec "notice that Symbol intends to terminate the OEM Agreement upon the expiration of thirty days from the date hereof." Symbol confirmed in its Form 8-K that the purported termination would be "effective April 9, 2005."

51.    45. Even if Symbol had been entitled to terminate the OEM Agreement (which it was not), Symbol's filing of the Symbol Patent Case against Intermec occurred prior to the purported termination of the agreement, and Symbol's filing of that action was a breach of Paragraph 18.k of the OEM Agreement.

52.    On April 28, 2005, Symbol filed the Wisconsin Patent Case against Intermec, asserting that Intermec products infringe two Symbol patents and seeking damages for the alleged infringement, as well as injunctive relief in the Wisconsin Patent Case.

53.    Symbol's filing of the Wisconsin Patent Case was a breach of Paragraph 18.k of the OEM Agreement.

54.    Symbol, in both the Symbol Patent Case and in the Wisconsin Patent Case, has asserted that OEM Products infringe the asserted patents.

55.    To the extent that Symbol has asserted that OEM products infringe its patents in the Symbol Patent Case and in the Wisconsin Patent Case, it has breached the OEM Agreement.

56.    46. Intermec has been damaged by Symbol's breach of the OEM Agreement in an amount yet to be determined, and will continue to be damaged until Symbol's breach is enjoined by this Court.

57.    47. Under the OEM Agreement, Intermec is entitled to recover its costs, including reasonable attorneys' fees, for this dispute, which arises out of, or is related to, to the OEM Agreement.

58.    48. Intermec has no adequate remedy at law.

## COUNT IV
## BREACH OF CONTRACT

59.     ~~49.~~ Intermec repeats and re-alleges each and every allegation of paragraphs 18-48~~58~~ hereof.

60.     ~~50.~~ Paragraph 5.a of the OEM Agreement provides for a "Frozen Release Commitment," for quantities of product forecast by Intermec.   Paragraph 9.d of the OEM Agreement provides that the termination of the OEM Agreement "shall not affect or impair the rights, liabilities and obligations of either party to the other under any Frozen Release Commitment for Product existing prior to such expiration or termination, nor relieve either party of any obligation or liability accrued under this Agreement or pursuant to any firm order prior to such expiration or termination."

61.     ~~51.~~ Symbol has refused to honor its Frozen Release Commitment under the OEM Agreement.

62.     ~~52.~~ Even if Symbol had a right to terminate the OEM Agreement (which it did not), its failure to comply with its obligations under Paragraph 9.d of the OEM Agreement is a breach of that agreement.

63.     ~~53.~~ Intermec has been damaged by Symbol's breach of the OEM Agreement in an amount yet to be determined and will continue to be damaged unless and until Symbol's breach is enjoined by this Court.

64.     ~~54.~~ Under the OEM Agreement, Intermec is entitled to recover its costs, including reasonable attorneys' fees, for this dispute, which arises out of, or is related to, the OEM Agreement.

65.     ~~55.~~ Intermec has no adequate remedy at law.

## COUNT V
## DECLARATORY JUDGMENT

66.    Intermec repeats and re-alleges each and every allegation of paragraphs 18-65 hereof.

67.    An actual and justiciable controversy exists between Intermec and Symbol concerning the parties' rights under paragraph 18.d of the OEM Agreement.

68.    Intermec is entitled to a declaration pursuant to 28 U.S.C. § 2201 that it is immune from suit for patent infringement with respect to the OEM Products.

69.    Under the OEM Agreement, Intermec is entitled to recover its costs, including reasonable attorneys' fees, for this dispute, which arises out of, or is related to, the OEM Agreement.

70.    Intermec has no adequate remedy at law.

Wherefore, Intermec seeks a judgment:

(a)    Dismissing Symbol's complaint with prejudice;

(b)    Declaring that Symbol had no right to terminate the OEM Agreement on March 10, 2005 or April 9, 2005, and that the OEM Agreement remains in full force and effect;

(c)    Declaring that Intermec is immune from suit with respect to the OEM Products under the OEM Agreement;

(d)    (c) Awarding Intermec damages resulting from Symbol's breach of the OEM Agreement;

(e)    (d) Awarding Intermec its attorneys' fees and costs;

(f)    (e) Enjoining Symbol, its officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them from breaching the OEM Agreement; and

11

(g)    (f) Granting Intermec such other and further relief as the Court shall deem just and proper.

MORRIS, NICHOLS, ARSHT & TUNNELL

/s/ Jack B. Blumenfeld
Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
Leslie A. Polizoti (#4299)
James W. Parrett (#4292)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
  Attorneys for Defendant and Counterclaim
  Plaintiff Intermec Technologies Corp.

OF COUNSEL:

Frederick A. Lorig
Bruce R. Zisser
BRIGHT & LORIG
633 West Fifth Street
Suite 3330
Los Angeles, CA  90071
(213) 627-7774

Carson P. Veach
Leland W. Hutchinson, Jr.
Jennifer Fitzgerald
FREEBORN & PETERS LLP
311 South Wacker Drive, Suite 3000
Chicago, IL 60606
(312) 360-6000

March 23, July____, 2005
456208468209

## CERTIFICATE OF SERVICE

I, Jack B. Blumenfeld, hereby certify that on ~~March 23, 2005~~July____, 2005, I electronically filed Answer and Amended and Supplemental Counterclaims of Intermec Technologies Corp. with the Clerk of the Court using CM/ECF, which will send notification of such filing to Karen L. Pascale (kpascale@bmf-law.com).

I also certify that copies were caused to be served on ~~March 24, 2005~~July____, 2005, upon the following in the manner indicated:

**BY HAND**

Karen L. Pascale, Esquire
Bouchard, Margules & Friedlander
222 Delaware Avenue
Suite 1400
Wilmington, DE  19801

**BY FEDERAL EXPRESS**

Eric J. Lobenfeld, Esquire
Hogan & Hartson
875 Third Avenue
New York, NY  10022

/s/      Jack B. Blumenfeld (#1014)
Morris, Nichols, Arsht & Tunnell
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com

<u>CERTIFICATE OF SERVICE</u>

I, Maryellen Noreika, hereby certify that on July 21, 2005, I electronically filed Intermec's Motion For Leave To File An Answer And Amended And Supplemental Counterclaims with the Clerk of the Court using CM/ECF, which will send notification of such filing to Karen L. Pascale (kpascale@bmf-law.com).

I also certify that copies were caused to be served on July 21, 2005, upon the following in the manner indicated:

**BY HAND**

Karen L. Pascale, Esquire
Bouchard, Margules & Friedlander
222 Delaware Avenue
Suite 1400
Wilmington, DE  19801


**BY FEDERAL EXPRESS**

Eric J. Lobenfeld, Esquire
Hogan & Hartson
875 Third Avenue
New York, NY  10022

<u>/s/    *Maryellen Noreika (3208)*</u>
Morris, Nichols, Arsht & Tunnell
(302) 658-9200
mnoreika@mnat.com